## SWANER v. UNION MORTGAGE CO

No. 6234.  Decided September 13, 1940.  (105 P. 2d 342.)

*Dan B. Shields, of Salt Lake City,* for appellant.
*Jesse R. S. Budge* and *Rex J. Hanson,* both of Salt Lake City, for respondent.

WOLFE, Justice.

This is an appeal from a decree of the District Court based on an advisory verdict of a jury, cancelling respondent's promissory note for $3,000 as well as a mortgage on certain real property, and awarding damages to respondent

for appellant's failure to perform the contract or to release the note and mortgage.

Respondent, plaintiff below, was engaged in the building of houses. He had had certain dealing with appellant, a corporation which lent money. Because of this he applied to it for a loan of $3,000 to finance the building of a certain house. As agreed to by the parties, a Federal Housing Administration commitment to insure the loan, which was to be secured by a mortgage on the property, was obtained. Appellant was to advance certain percentages of the loan as the building progressed and as the work was approved by F. H. A. The note was signed and the mortgage was executed and recorded. Certain expenses incident to securing the F. H. A. commitment and a premium for fire insurance required by appellant were paid by appellant.

Respondent started to build the house. He erected the studding upon the concrete foundation, nailed on sheeting, and nearly completed the roof. No advancement of money was made by appellant although respondent on several occasions requested that money be advanced.

There is a dispute as to whether or not F. H. A. inspected and approved the building after it reached the stage at which appellant had agreed to advance 10 per cent of said loan. There was positive testimony that such inspection had been made and approval had been given. In evidence are exhibits which tend to confirm this testimony.

It appears that differences existed between the parties regarding another transaction involving a note and loan, and that appellant to some extent based its refusal to advance money on the loan here being considered because of respondent's alleged failure to meet the terms of the other agreement. Having failed to secure any advance on his loan and being forced to cease work because of lack of funds, respondent made written demand on appellant to cancel his note and to release the mortgage. This appellant refused to do until respondent reimbursed it for the alleged cost of securing the F. H. A. commitment and for the prem-

ium for the insurance. Thereupon, respondent brought an action in the court below to cancel the note and mortgage and to recover damages. Judgment was for respondent. Appellant brings this appeal and assigns several errors.

Appellant insists that the finding of the lower court that appellant refused to cancel the note and mortgage is erroneous because it specifically offered to cancel said note and mortgage provided respondent reimbursed it for certain expenses. We see no error in the finding. By its very argument appellant admits that its offer to cancel was conditional. An offer to cancel based on a condition is in reality a refusal to cancel together with a counter offer. If appellant had breached its contract, as respondent alleged, it was bound to cancel the note and mortgage and could not require respondents to fulfill further conditions.

Appellant argues vigorously that it was entitled to reimbursement for expenses and especially for the premium on the fire insurance because such expenditures were made for the benefit of respondent. The expenditures were made for the benefit of both parties—the lender as well as the borrower. Both expected to profit from the business venture to which said expenses were incident. This is true also of the insurance. Had there been a fire respondent would have received insurance no doubt, but appellant also would have received from said insurance any funds which it had advanced. The policy was made to the mortgagor but for the benefit of the mortgagee as its interest appeared. Appellant was not justified in refusing to cancel the note and mortgage. Its wrongful refusal to advance a percentage of the loan when certain work had been done was a breach of contract and freed respondent, who treated the contract as terminated, from any duty to perform under the contract. After appellant had breached the contract by its own faults it could not insist on being made whole as a condition for releasing the mortgage. Appellant's breach freed respondent from any obligation

to make payments to appellant. The expenditures in question were to be repaid by respondent in a given manner under the contract. Appellant's breach released respondent from that duty and appellant was wrong in refusing to release the mortgage in an attempt to compel payment.

Appellant contends that F. H. A. approval of the work was never given and that it, therefore, never was bound to advance any money. An examination of Exhibit 1, admittedly received by respondent and held in its files at the time demands for money were being made, and of Exhibit 3 which was left at the house by F. H. A., and consideration of the testimoney in the record, reveals that there was competent and convincing evidence that such approval had been given. On Exhibit 1 the "foundation, walls, piers" are marked as "entirely completed." Construction was approved "subject to correction of defective work." But no work was checked as being defective. The notation that the concrete was to be checked later for freezing was not an indication of defective work and did not invalidate the approval. Moreover, there is testimony that said concrete was checked subsequently and was found to be all right. Exhibit 3 which was left at the premises was even more forthright. It shows categorically that "the work then completed had passed the 1st inspection." It apears from the testimony that after the house had reached a stage where the first floor joists were in place and after appellant's attention had been directed specifically to its aproval by F. H. A., that appellant still refused to advance any money until the parties "had arranged about this other house." The inference readily may be drawn that this was the sole basis for the refusal at all times. Where two separate and independent contracts exist between A and B, and A breaches one contract, B is not thereby justified in breaching the other contract and may be held for resulting damages if he so breaches. *Rock* v. *Gaede,* 111 Kan. 214, 207 P. 323, 27 A. L. R. 1152;

*Hanson & Parker* v. *Wittenberg,* 205 Mass. 319, 91 N. E. 383.

Each of the specific items of damage found by the jury and incorporated in the judgment has been assailed. Damages for demurrage on materials and for loss of discount were, after judgment, waived by respondent and the trial court modified its order to exclude these items, therefore, we are not concerned with them. But appellant insists that there is no evidence to support the award of $25 for damages to the house caused by its standing open and unfinished through the winter. True it is that there is a sharp conflict of the testimony by several witnesses as to whether or not there was any damage caused by the weather. But the jury found that there was damage to the extent of $25, the trial judge adopted the jury's finding, and we cannot say that there is such a preponderance of evidence against the adopted findings that we are required to find differently.

The other item of damage which appellant disputes is the award of $200, as damages which respondent sustained by being required to retain attorneys to bring this suit to cancel the note and mortgage. Sec. 78-3-8, R. S. U. 1933, reads: "If the mortgagee fails to discharge or release any mortgage after the same has been fully satisfied, he shall be liable to the mortgagor for double the damages resulting from such failure. Or the mortgagor may bring an action against the mortgagee to compel the discharge or release of the mortgage after the same has been satisfied; and the judgment of the court must be that the mortgagee discharge or release the mortgage and pay the mortgagor the costs of suit, and all damages resulting from such failure."

Respondent elected to bring suit under the second sentence in this section. The question before us is whether or not the language "and all damages resulting from such failure" is broad enough to cover damages suffered because of the necessity of retaining an attorney to bring suit. A mortgage "has been satisfied" when it

has been terminated and the contract on which it was based has been rescinded.

"Full satisfaction * * * may be received in other modes than by the payment of money." *Valle's Adm'x* v. *American Iron Mt. Co.*, 27 Mo. 455.

" 'Satisfaction' in legal phraseology 'imports a release and discharge of the obligation in reference to which it is given.' *Jersey Island Dredging Co.* v. *Whitney*, 149 Cal. 269, 86 P. 509, 511, 691. 'To satisfy' means 'to answer or discharge, as a claim, debt, legal demand or the like.' Webster's New International Dictionary." *Boca Ratone Co.* v. *Commissioner of Internal Revenue*, 3 Cir., 86 F. 2d 9, 10.

Appellant wrongfully refused to perform under the contract to advance the money for building the house. The consideration for the mortgage having failed ▬ the same was terminated and this termination "satisfied" the mortgage.

"The holder of a mortgage renders himself liable to the statutory penalty for refusing to release a mortgage upon sufficient tender, although he claims that the tender is insufficient * * *." Jones on Mortgages, 8th Ed., vol. 2, § 1270, p. 767.

Under a statute very similar to ours which provided that a mortgagor could recover from a mortgagee who refused to discharge a mortgage which had been satisfied "all damages which he or they may sustain by reason of such refusal," Civ. Code, § 2061, the Supreme Court of South Dakota said that fees paid to attorneys to bring the action to compel discharge of the mortgage were a proper element of damages. *Kelly* v. *Narregang Inv. Co.*, 38 S. D. 632, 162 N. W. 386; Id., 41 S. D. 222, 170 N. W. 131. See, Jones on Mortgages, 8th Ed. Vol. 2, § 1269, p. 764-5. In the cases cited above the fact situation was strikingly similar to the situation here, in that the mortgagee refused to advance the money as agreed yet refused to release the mortgage and the mortgagor was compelled to bring suit to cancel the mortgage.

The Supreme Court of Idaho has held in *Cornelison* v. *United States Building & Loan Assn.*, 50 Idaho 1, 292 P. 243, that "damages" suffered as a result of refusal of a mortgage to cancel a mortgage when fully satsfied include attorney's fees incurred in bringing an action to compel cancellation. See, also, Sec. 6369, Comp. Statutes Idaho, 1919.

In *McClure* v. *Scates*, 64 Kan. 282, 67 P. 856, attorney's fees were allowed as an element of damages sustained as a result of plaintiff's being forced to bring mandamus proceedings against defendant. Utah follows this rule in mandamus proceedings. See *Colorado Development Co.* v. *Creer*, 96 Utah 1, 80 P. 2d 914 (Syl. 17).

Appellant cites *Openshaw* v. *Halfin*, 24 Utah 426, 68 P. 138, 91 Am. St. Rep. 796, for the proposition that a statute providing for attorney's fees is unconstitutional. The Openshaw case did declare unconstitutional as special legislation a statute providing recovery by one party of attorney's fees if successful but making no provision for ▮▮▮ recovery of such fees by the other party if successful. But the case is not in point here. In this suit respondent sued for damages and not for attorney's fees. This is not a suit to recover attorney's fees as such. Charges of an attorney are part of the damages sustained because of refusal to satisfy. See Sec. 104-68-12, R. S. U. 1933; *Colorado Development Co.* v. *Creer*, supra. Counsel has cited many cases in support of the proposition that attorney's fees, in the absence of statute or agreement between the parties, are not ordinarily recoverable as damages. But we are here confronted with a statute dealing with the release of mortgages which provides that one who wrongfully fails to release a mortgage must pay "all damages resulting from such failure." We believe that "all damages" includes the damage one incurs when compelled to employ an attorney to bring legal action to secure a release of the mortgage.

Appellant has strongly urged that it should not be compelled to pay damages arising from respondent's pay-

ment of attorney's fees because it was acting in good faith in refusing to release the mortgage. But we need not decide whether "good faith" in refusing to release is a defense in an action brought under Sec. 78-3-8 R. S. U. 1933. The evidence in the record indicates that appellant refused to advance money under the contract in an attempt to force payment on another contract. And appellant offered to release the mortgage only if reimbursed for its expenditures although by its own act it had breached the contract and made it impossible for respondent to proceed. Appellant failed to establish that it acted in "good faith" in refusing to release the mortgage.

A party who contracts to lend money to another to build a house, taking a mortgage thereon as security, observes the other party expend money and time and perform as agreed, yet refuses for reasons of coercion connected with another matter to advance money as agreed, can hardly insist that he acted in entire good faith and should therefore be protected from payment of certain damages.

Judgment affirmed. Costs to respondents.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ. concur.