SHIBATA v. BEAR RIVER STATE BANK.

No. 7224.   Decided April 28, 1949.   (205 P. 2d 251.)

See 59 C. J. S., Mortgages, sec. 474; 36 Am. Jur. 933. Statutes allowing penalty and damages against mortgagee refusing to discharge mortgage, note, 56 A. L. R. 335.

*Thatcher & Young,* of Ogden, and *W. E. Davis,* of Brigham, for appellant.

*Lewis J. Wallace* and *M. Blaine Peterson,* both of Ogden, for respondent.

WADE, Justice.

This suit was commenced by Ai Shibata, personally and as administratrix of the estate of S. Y. Shibata, deceased, to have a certain note secured by crop and real estate mortgages, declared void and for the cancellation of the mortgages. From an adverse judgment she appeals.

The undisputed facts are that: Saburo Shibata and George Shibata, sons of appellant herein and heirs of the estate of S. Y. Shibata, had become indebted to the Bear River State Bank, respondent herein, for a sum somewhat in excess of $12,000, which was secured by a lien on a certain truck and trailer. The bank had taken possession of the truck and trailer because the Shibatas had become delinquent in their payments. Saburo Shibata desired to regain possession of the truck and trailer and was told by Peckenpaugh, an officer of the bank, that this could be arranged if he would pay $3,000 on account. Saburo said

he did not have that amount but thought he could raise that much on a loan from his father's estate. Peckenpaugh then called the attorney for the estate, informed him of the facts and asked if such a loan to be secured by mortgages could be made to the estate. The attorney said it could be arranged. Subsequently, this attorney filed a petition in probate court by Ai Shibata, as administratrix, in which it was represented that it was necessary to procure a loan of $3,500 to be secured by real estate and crop mortgages for the purpose of discharging certain delinquent payments due from the estate to the Federal Land Bank of Berkeley and to other creditors and for the further purpose of financing the crops for the following year. This petition was signed for the petitioner by the attorney and also verified by him. After due notice was given, a hearing was held at which the attorney testified as to the facts stated in the petition, whereupon the court granted the petition and signed an order in which it was recited that:

"* * * from the evidence offered, [the court] finds that the mortgages as prayed for are necessary for the advantage of said estate * * *"

A certified copy of this order was mailed by the attorney to the bank along with a request that $500 of the amount to be loaned be credited to his account as partial payment for moneys due him from the estate for fees and costs advanced. The bank prepared the note and mortgages and upon advice of the attorney for the estate provided that these be signed both personally and in her capacity as administratrix of the estate by appellant herein. These mortgages and the note were taken to Ai Shibata's home on the farm by two representatives of the bank, one of whom had been a close friend of the deceased, and there signed by her after explanations in Japanese by a daughter, since appellant can neither read nor understand the English language.

What happened at the time the note and mortgages were signed is in dispute. The bank's representatives testifying

that they had asked the daughter to interpret and that the daughter had been told that the mortgages were both on the crops and on the land, but the daughter testified that she was never told and therefore did not tell her mother that the mortgages covered both the crops and the land but understood that the mortgages only covered the crops. The daughter at that time was a high school student about 17 years of age and could, of course, read, write and understand the English language. Although the mortgages which were presented to the appellant showed on the faces thereof that one was for crops and the other on the land, these mortgages were not exhibited to the daughter to be read. The bank then applied $3,000 of the amount loaned on Saburo's indebtedness and $500 on the attorney's account. Appellant was unaware that $500 of the amount loaned had been paid out as attorney's fees, nor had she been advised or consulted about her supposed petition to the court asking it to authorize her to borrow the money. She did know that she was signing the mortgages to help her son pay off his indebtedness and get back his truck and trailer.

When appellant discovered that the mortgages covered the land as well as the crops to be grown thereon, she brought this suit for their cancellation.

It is appellant's contention that the court erred in dismissing her suit and entering judgment in favor of respondent herein because the loan which the mortgages secured was made to secure the obligation of a third party and was not made for the benefit of the estate and therefore was not a valid and binding obligation against the estate under the provisions of Sec. 102-10-34, U. C. A. 1943, which states that:

"Whenever in any estate now being administered, or that may hereafter be administered, it shall appear to the court or judge to be for the advantage of the estate to raise money by a mortgage of the property or any part thereof, the court, as often as occasion therefor shall arise in the administration of any estate, may, on petition, notice and hearing, authorize, empower and direct the executor or administrator to mortgage the same or any part thereof

upon such terms and for such length of time as to the court may seem necessary or beneficial. * * *"

Appellant cites *Stockyards National Bank of South Omaha* v. *Bragg*, 67 Utah 60, 245 P. 966, in support of her argument. In that case this court held that under a statute which authorized the court to allow a guardian to mortgage ward's property when it is satisfied that it is for the best interests of the estate, an order authorizing the mortgaging of such property which on its face and on the face of the record shows that it was made to secure the debts and obligations of third parties and that the protection of the interests of the minors was a mere incident is an invalid order and shows the court exceeded its power and jurisdiction.

Respondent does not find fault with the reasoning of the above case but argues that it is distinguishable from the instant case because here the record and order are apparently valid as the reasons given to the court and upon which it based its orders, were within the provisions of the statutes authorizing such action where it is for the advantage of the estate. This being so, it argues, the order of the court is not subject to collateral attack; that this is a collaterial attack and if any error was committed by the court, it was its denial of the general demurrer to the complaint.

It appears to this court that even if respondent's contention that the order being valid on its face is not subject to collateral attack were correct, still it could not prevail because under the facts of this case it is undisputed that the order of the court was not obeyed. The court did not authorize the bank to apply the proceeds of its loan to the credit of third parties. What the bank did was without any authorization whatever. The order on its face authorized the loan because it was necessary and for the advantage of the estate. The bank knew that the loan was not to be made because it was for the advantage

of the estate, but was to be made to secure the obligation of a third party. This was sufficient to put the bank on notice that there was not even an apparent authorization to mortgage the property for the purposes intended by it. Since a representative cannot give a valid mortgage on estate property without apparent authority derived from a court of proper jurisdiction, it follows the court erred in refusing to grant appellant's request for cancellation of the note and mortgages insofar as the rights of the estate in the property is concerned.

Having decided the note and mortgages were invalid and not binding on the estate, the question remains as to whether they were evidence of a valid obligation of appellant, personally. The officer of the bank who negotiated the loan testified that appellant was requested to sign personally as well as in her representative capacity upon the advice of the estate's attorney. He also testified that the bank would not have made the loan unless the interests of all concerned were included. The facts here are somewhat similar to the situation in the Stockyards case, supra. There the plaintiff, who was the obligee, pleads that its assignor agreed to extend the time of a past due obligation only on condition that the interests of both adults and minors in certain Salt Lake City property were validly pledged as additional security for the payment of such obligation. In answer to this pleading the adult owners of the interests in the additional security specifically alleged that they delivered their note and mortgage pledging their interest in the additional security only on condition that the interests of the minors in that security were validly pledged for that purpose. They further alleged that the interests of the minors in that property were not validly pledged and therefore they were also not bound thereby. No evidence was introduced on this question but the trial court on these pleadings, or so its findings were construed by this court, found that the note and mortgage of the adults were delivered conditionally upon the validity of the pledge of the

interests of the minors in the additional security. The trial court held that the minors' interests in that property were validly pledged and ordered the mortgage foreclosed. But this court reversed that holding, dismissing the action as to the minors, and also said that on those pleadings and findings the adults were entitled to a judgment in their favor, but remanded the matter for further hearing as to the adults with permission for the plaintiff to amend its pleading.

In remanding the case for a further hearing with leave to amend, the court apparently acted in accord with the equities and the probable facts of the case. It is hard to believe that a person in the business of loaning money would actually extend the time for payment of an overdue obligation and advance additional money thereon, at a time when the existing security was apparently insufficient upon the delivery of notes and mortgages pledging additional property for the security of such loan, with the understanding that the delivery of such notes and mortgages, even as to the adult mortgagors, was conditional upon the validity of the pledge of the interests of the minors in the additional security. Certainly the obligee would not agree to a proposition that would render the obligation of the adults a nullity merely because the obligation of the minors turned out to be invalid.

In the instant case, the evidence is clear that the bank would not have made the loan unless it thought every one's interest in the land was validly pledged. But it does not follow that the delivery of the note was accepted by it conditionally on the entire obligation being valid ■ nor does it prove a conditional delivery of the note and mortgage on the part of Mrs. Shibata. The fact that an obligee insists upon having the benefit of all parties interested in the property hypothecated, does not tend to prove that the obligors agreed to be obligated upon condition that all were obligated or none. Mrs. Shibata understood that she was mortgaging her property to help her

son on his loan with the bank. As far as she personally is concerned there is no evidence that she would not have executed the mortgages unless the estate was also obligated. She did not so contend nor plead. She merely pleaded that she did not understand that she was signing real property mortgages and thought that she was only signing crop mortgages. The court found the evidence against her on this fact. From a reading of the record we cannot say that its findings were unreasonable or not in accord with the evidence. It follows, therefore, from what we have said that the obligation of Mrs. Shibata, personally, is valid and is binding upon her interest in the real property.

Appellant in her complaint had asked that the court allow her attorney's fees as damages for the failure of the bank to release the mortgages of record. Sec. 78-3-8, U. C. A. 1943, provides that:

"If the mortgagee fails to discharge or release any mortgage after the same has been fully satisfied, he shall be liable to the mortgagor for double the damages resulting from such failure. Or the mortgagor may bring an action against the mortgagee to compel the discharge or release of the mortgage after the same has been satisfied; and the judgment of the court must be that the mortgagee discharge or release the mortgage and pay the mortgagor the costs of suit, and all damages resulting from such failure."

In *Swaner* v. *Union Mortgage Co.*, 99 Utah 298, 105 P. 2d 342, this court held that attorney's fees were a proper element of damages where a mortgagor had to bring suit to compel the release of a mortgage where the mortgagee had refused to advance the money for which the mortgage was given. In that action the defendant strongly urged that attorney's fees should not be allowed because it had acted in good faith in refusing to release the mortgage. We there concluded that it was not acting in good faith but did not decided whether "good faith" is a defense in an action brought under the above statute. Here, respondent also claims "good faith" and urges that as a defense. Respondent's argument is well

taken. The above statute is penal in nature and should be strictly construed. It is not meant to penalize one who honestly, though mistakenly, refuses to release or discharge a mortgage of record because he believes that there has been no full satisfaction. Under the facts and circumstances of this case where the bank, relying upon the advice of an attorney, honestly thinking that it had valid and subsisting mortgages against appellant which had not been satisfied, refused to release the mortgages it was acting in good faith and was therefore not liable for damages under the above section. See *Mathieu* v. *Boston,* 51 S. D. 619, 216 N. W. 361, 56 A. L. R. 332 and notes on pages 345 and 346, on the question of "good faith" as a defense under similar statutes. The court therefore did not err in refusing to allow attorney's fees as damages.

Reversed with instructions to proceed in accordance with this opinion. Costs to appellants.

WOLFE, McDONOUGH and LATIMER, JJ., concur.

PRATT, Chief Justice (concurring in result).

I concur in the result. I do not agree with the statements of the prevailing opinion as to what the bank should have known from the face of the order authorizing the loan. I am having a hard time convincing myself that the lower court's decision should not be upheld in its entirety.