HECTOR, INC., a corporation, Plaintiff, Respondent and Cross-Appellant,

v.

UNITED SAVINGS AND LOAN ASSOCI-ATION, a corporation; and Land Title Company, a corporation, Defendants, Appellants and Cross-Respondents.

No. 19524.

Supreme Court of Utah.

Aug. 5, 1987.

Lester A. Perry, Salt Lake City, for Hector, Inc.

Richard L. Bird, Salt Lake City, for United Sav. & Loan, et al.

STEWART, Associate Chief Justice:

Hector, Inc., a construction company, executed a trust deed as trustor to secure an $800,000 loan from United Savings and Loan Association (United), the beneficiary of the trust deed. United appeals a judgment holding it liable for double damages and attorney fees for breaching its duty to request a reconveyance from the trustee to Hector of the real property which secured the loan under the trust deed, as required by Utah Code Ann. § 57–1–33 (1986).[1] Hector cross-appeals from the award of damages.

On this appeal, United argues that the trial court erred in holding that (1) United breached its statutory duty to request a reconveyance; (2) Hector did not have a duty to mitigate damages; (3) § 57–1–33 allows double damages and attorney fees; and (4) each of the three lots wrongly withheld by United had a value of $20,000. Hector cross-appeals on the ground that the trial court erred in refusing to award additional damages. We affirm in part, reverse in part, and remand for a recalculation of damages.

---

**1.** Utah Code Ann. § 57–1–33 (1986) reads as follows:

When the obligation secured by any trust deed has been satisfied, the trustee shall, upon written request by the beneficiary, reconvey the trust property. The reconveyance may designate the grantee therein as "the person or persons entitled thereto." The beneficiary under such trust deed shall deliver to the trustor or his successor in interest the trust deed and the note or other evidence of the obligation so satisfied. Any beneficiary under such trust deed who refuses to request a reconveyance from the trustee for a period of thirty days after written demand therefor is made by the trustor or his successor in interest shall be liable to the trustor or his successor in interest, as the case may be, for double damages resulting from such refusal, or such trustor or his successor in interest may bring an action against the beneficiary and trustee to compel a reconveyance of the trust property and in such action the judgment of the court shall be that the trustee reconvey the trust property and that the beneficiary pay to the trustor, or his successor in interest, as the case may be, the costs of suit including a reasonable attorney's fee and all damages resulting from the refusal of the beneficiary to request a reconveyance as hereinabove provided.

## I.

On January 10, 1978, Hector entered into a land development agreement with United and executed a promissory note and a deed of trust in favor of United to secure a loan of $800,000 to finance the development of a residential subdivision in Farmington, Utah. At approximately the same time, Hector obtained an improvement bond from Western Mortgage Loan Corporation (Western Mortgage) in favor of Farmington City to guarantee Hector's workmanlike construction of the off-site improvements in the subdivision. None of the documents executed by Hector with respect to the Western Mortgage bond provided security for the bond, although it was Western Mortgage's practice to require security on such bonds. United and Western Mortgage are separate corporations owned by the same shareholders. Both have the same directors and principal operating officers, one of whom is Mrs. LaVerne Neilson. Mrs. Neilson represented both United and Western Mortgage in the transactions with Hector.

By April 30, 1981, Hector had paid United all amounts owed under the promissory note. However, when Mrs. Neilson accepted Hector's final payment, she told Hector that the reconveyance of the property subject to the trust deed was conditioned on Farmington City's release of the Western Mortgage improvement bond.

Shortly thereafter, Farmington City released all but $17,900 of the improvement bond. That amount was to be released at the expiration of a routine six-month waiting period used by Farmington City to ensure that the off-site improvements had been installed in a workmanlike manner. All except ten lots were then released and reconveyed by the trustee to Hector. United refused to direct the trustee to release the ten lots and, instead, retained them to secure Western Mortgage's remaining $17,900 obligation on the improvement bond.

On May 27, 1981, Hector made a written request for the release and reconveyance of the remaining ten lots. When United refused to request a reconveyance, Hector filed suit, seeking the release and reconveyance of the lots and damages as provided by § 57–1–33.

The trial court found that United unconditionally offered on September 11, 1981, to request the trustee to reconvey to Hector seven of the ten lots and that Hector refused to accept the offer. On January 28, 1982, the improvement bond was finally released by Farmington City, and the same day, all ten lots were released and reconveyed to Hector.

Sometime between May 27, 1981, and September 11, 1981, Hector's president, Jim Pappas, telephoned Valley Bank & Trust Company to discuss the possibility of substituting a bond underwritten by Valley Bank for the bond underwritten by Western Mortgage. Mr. Pappas testified that Valley Bank would "gladly take the bond" for $125, but Mr. Pappas did not substitute the Valley Bank bond for the Western Mortgage bond. Mr. Pappas took no further action to minimize Hector's losses. Later, during the summer of 1981, Mr. Pappas had the opportunity to trade the ten lots for real property in West Valley City. He claimed at trial that Hector stood to make at least $200,000 profit on the swap.

The trial court ruled that United breached its duty to request a reconveyance from the trustee of all the lots when Hector had fully repaid the United promissory note. The court also held, however, that Hector should have accepted United's September 11, 1981 offer and that the profits Hector claimed it lost were too speculative to be recoverable. The court valued each lot at $20,000 and awarded Hector damages based on ten percent per annum interest on the value of all ten lots for the period June 27, 1981 (i.e., thirty days after the written notice required by § 57–1–33), to September 11, 1981, plus ten percent interest per annum on the value of the three lots for the period September 11, 1981, to January 28, 1982. Those two figures total $6,432.87, and that was doubled pursuant to the statute. Hector was also awarded $2,000 in attorney fees.

## II.

We address first whether United breached its statutory duty to request a reconveyance of all the lots when Hector paid off the loan in full. Although § 57–1–33 appears to impose an absolute duty on a trust deed beneficiary to request a reconveyance from the trustee on written demand of the trustor, see *supra* note 1, United argues that a beneficiary's good faith in not requesting a reconveyance by the trustee of the security to the trustor should be an affirmative defense to an action brought under that section. United's argument is based on *Shibata v. Bear River State Bank*, 115 Utah 395, 205 P.2d 251 (1949), which held that good faith is an affirmative defense to an action brought under the predecessor to § 57–3–8, which governed the release of mortgages and was similar in wording and purpose to § 57–1–33.[2]

 The mortgage release statute and the trust deed reconveyance statutes are *in pari materia;* they serve the exact same purpose of protecting borrowers who secure their debt by an interest in real estate from lenders who refuse to return the security when the debt is discharged. The statutes hold lenders to a high degree of care and promptness in clearing title to a borrower's property when the debt is paid since the lender no longer has a legitimate interest in the security and the borrower has a great interest in freeing the property of the security interest. Like the statute at issue in *Shibata*, § 57–1–33 is "penal in nature and should be strictly construed," but "[i]t is not meant to penalize one who honestly, though mistakenly, refuses to release or declare a mortgage of record because he believes that there has been no full satisfaction." *Id.* at 403, 205 P.2d at 254. *See also* Annot. 56 A.L.R. 335 (1928).

 In this case there was no question that the debt to United had been fully paid.

Hector had paid the promissory note and fully satisfied the terms of the trust deed securing that note. United knew that, but refused to request a reconveyance of all the property. The ten lots it retained were to secure a different obligation contingently owed to a different party. United's use of the leverage of refusing to reconvey the land securing the trust deed to obtain security for another debt is not good faith by any reckoning.

*Swaner v. Union Mortgage Co.*, 99 Utah 298, 307, 105 P.2d 342, 346 (1940), is on point on this issue. Union Mortgage sought to justify its refusal to perform under one contract with a builder because the builder had failed to comply with the terms of a different contract between the two parties. The Court rejected the proposition that one party can justifiably refuse to perform under one contract to compel the other party to the contract to perform under a second contract. Withholding performance under one contract to compel a contracting party to do an act with respect to another independent contract is not good faith.

That principle applies here. There was never an agreement that Western Mortgage would be given security on the Farmington bond. Indeed, United readily admits that none of the agreements between it and Hector conditioned the reconveyance of the property subject to the trust deed on the release of the Western Mortgage improvement bond. United had no right to attempt to force Hector to provide security for the Farmington bond.

United contends that it is industry practice to provide security for bonds and that since United and Hector had always expressly agreed in prior dealings to secure improvement bonds, the intent of the parties in this case could not have been otherwise.

2. Utah Code Ann. § 57–3–8 (1986) currently reads as follows:

If the mortgagee fails to discharge or release any mortgage after the same has been fully satisfied, he shall be liable to the mortgagor for double the damages resulting from such failure. Or the mortgagor may bring an action against the mortgagee to compel the discharge or release of the mortgage after the same has been satisfied; and the judgment of the court must be that the mortgagee discharge or release the mortgage and pay the mortgagor the costs of suit, and all damages resulting from such failure.

The provision had the same wording at the time *Shibata* was decided.

Course of dealing or industry usage and custom is admissible evidence to construe ambiguous terms of an agreement or to supply missing terms in an otherwise valid agreement, at least under certain circumstances; but evidence of a course of dealing and industry usage and custom does not suffice to create a whole agreement, especially when the agreement must be in writing to satisfy the statute of frauds. *Farmers Co-operative Association v. Cole*, 239 N.W.2d 808 (N.D.1976).

Under Utah law, an agreement to secure an obligation with real property must be in writing because it creates an interest in real property. Utah Code Ann. § 25–5–1 (1984); *Jackson v. Dallin*, 47 Utah 312, 314, 152 P. 341, 342 (1915). Therefore, evidence of a course of dealing or of industry usage and custom is not admissible to show that real property used to secure one obligation pursuant to a trust deed is also meant to secure another obligation.

In sum, United unequivocally breached its statutory obligation and had no good faith excuse to justify its breach.

### III.

United next asserts that the trial court erred in awarding damages of $6,432.87 and claims that Hector's damages were in reality only $125. United's theory is that Hector could have easily mitigated its damages by substituting a Valley Bank bond for the Western Mortgage bond for $125. United also argues that Hector could have mitigated its damages in other ways while still allowing Western Mortgage to be secure on the bond.

The short answer to United's argument is that a nonbreaching party is not required to mitigate losses by accepting the breaching party's unlawful or coercive demand to do something not even arguably required by the original agreement. *Southwestern Gas & Electric Co. v. Stanley*, 45 S.W.2d 671 (Tex.Civ.App.1931); *Seeley v. Peabody*, 139 Wash. 382, 247 P. 471 (1926). Any effort by Hector to mitigate in this case would have been tantamount to

accepting United's unjustifiable demand that Hector secure Western Mortgage in the amount of the liability secured by the bond. The law is succinctly stated in 22 Am.Jur.2d *Damages* § 32, at 55 (1965): "The doctrine of avoidable consequences does not include yielding to a wrongful demand by the wrongdoer to save the wrongdoer from the legal consequence of his own error...." *See also* 5 *Corbin on Contracts* § 1043, at 272–74 (1964).

### IV.

United also argues that the language of § 57–1–33 does not allow double damages and attorney fees when the trial court enters an order directing reconveyance of the security. United asserts that the "or" located midway through that section creates two mutually exclusive remedies for a trustor when a creditor beneficiary of a trust deed refuses to request a reconveyance of the property upon payment of the debt.[3] The first remedy under the statute clearly calls for double damages when an order of reconveyance is not entered. The alternative remedy, according to United, is single damages and attorney fees when a judicial order of reconveyance is entered. Thus, United contends that double damages are not available when the trustor also obtains an order of reconveyance.

United bases its argument on its reading of *Swaner v. Union Mortgage Co.*, 99 Utah 298, 105 P.2d 342 (1940). United asserts that *Swaner* held that the predecesser to § 57–3–8, which is similar to § 57–1–33, *see supra* note 2, created two mutually exclusive remedies and that double damages cannot be obtained when a lawsuit is utilized to compel a reconveyance of the trustor's property. This reading of *Swaner*, however, is wholly unjustified. *Swaner* does not discuss the double damages issue; nor was it even presented to the Court.

When interpreting a statute, we generally assume each term of the statute should, if possible, be given an interpretation that is in accord with the commonly accepted meanings of its words. *Board of*

**3.** *See* note 1, *supra.*

*Education v. Salt Lake County,* 659 P.2d 1030, 1035 (Utah 1983); *Grant v. Utah State Land Board,* 26 Utah 2d 100, 485 P.2d 1035 (1971). The plain language of § 57-1-33 clearly supports the construction given it by the trial court. Section 57-1-33 provides for double damages when the beneficiary of a trust deed refuses to request a reconveyance in a timely fashion after the debt secured by the trust deed has been satisfied. That part of the statutory provision says nothing about an order of reconveyance. It apparently contemplates that a reconveyance will, in fact, have occurred by the time a suit is brought. The statutory language simply makes clear that a reconveyance does not make a double damages action moot, even though the reconveyance is completed before the action goes to judgment.

If, however, there is no reconveyance and the trustor must obtain judicial assistance for a reconveyance of the property, then a lawsuit may be pursued under the second part of the sentence, providing for the appropriate remedies in § 57-1-33, and the trustor can obtain an order compelling reconveyance *and* recover "all damages resulting from the refusal of the beneficiary to request a reconveyance as hereinabove provided." The phrase "as hereinabove provided" is most logically read in connection with the word "damages" and not in connection with the words "to request a reconveyance." If read in connection with the words "to request a reconveyance," the words "as hereinabove provided" add nothing to the sentence and are surplusage. If, however, those words are read in connection with the word "damages," they give the statutory scheme symmetry and consistency. Therefore, the phrase "as hereinabove provided" can only be reasonably construed as referring to that part of the sentence which allows double damages for the first remedy.

United also argues that the trial court improperly valued the lots when it computed damages. It asserts that since Mr. Pappas testified that he sold some lots for between $12,000 and $15,000, the court erred in valuing the lots at $20,000 each. Having reviewed the record, we find more

than enough evidence to support the court's finding. United's position is without merit.

Finally, United argues that the trial court erred in assessing United attorney fees of $2,000. The substance of the argument is that United acted in good faith when it refused to request a reconveyance of the ten lots, and therefore § 57-1-33 is inapplicable and attorney fees cannot be assessed. We have held that United did not act in good faith. Since the premise is wrong, so is the conclusion regarding attorney fees.

## V.

■ On its cross-appeal, Hector argues that the trial court erred by only awarding it damages for the value of three unreconveyed lots from September 11, 1981, to January 28, 1982. Hector argues that United's offer of September 11th was not an unconditional offer and also that it was inadmissible under Rule 408, Utah R.Evid., as an offer to compromise Hector's claim.

Hector waived the claim it now makes that the letter should have been excluded because Hector allowed the letter to be introduced to prove that the offer was not unconditional. The claim made that it was error to admit the letter is not now well taken.

We agree that the letter did not make an unconditional offer. The letter reads:

I have discussed with LaVerne Neilson the proposals we talked about. I repeat Mrs. Neilson is willing to reduce the security for the bond to a mutually determined value which realistically reflects the bond obligation. Certainly three lots as security will not cause a hardship nor will this interfere with your sale. We stand ready, willing and able to release all lots but three.

The trial court's conclusion to the contrary was plainly error. On its face, the letter does not make an unconditional offer to release. The offer was "to reduce the security for the bond to a value which realistically reflects the bond obligation." "[T]hree lots as security ..." was thought

to be sufficient. In other words, United's release of seven lots was expressly conditioned upon its holding three lots as security for the Western Mortgage debt. That is hardly an unconditional offer. Rather, it was another unlawful demand to modify the terms of the original agreement of the parties. Accordingly, the trial court erred when it refused to allow damages for all ten lots for the period September 11, 1981, to January 28, 1982.

### VI.

For the foregoing reasons, we affirm in part, reverse in part, and remand for a recalculation of damages based on the failure of United to request a timely reconveyance of all ten lots for the period June 27, 1981 to January 28, 1982. Costs to respondent and cross-appellant.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.