**2015 UT App 301**

# THE UTAH COURT OF APPEALS

JP MORGAN CHASE BANK, NA,
Appellee,
*v.*
SHANNON WRIGHT AND RUSSELL S. WALKER,
Appellants.

Memorandum Decision
No. 20140625-CA
Filed December 17, 2015

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 120900600

Russell S. Walker, David R. Williams, and Anthony
M. Grover, Attorneys for Appellants

Leslie Van Frank and Bradley M. Strassberg,
Attorneys for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Memorandum
Decision, in which JUDGES JOHN A. PEARCE and KATE A. TOOMEY
concurred.[1]

BENCH, Senior Judge:

¶1     Shannon Wright[2] appeals the district court's order
granting summary judgment in favor of JP Morgan Chase Bank,

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

2. The other appellant, Russell S. Walker, is also a party to this
action in his capacity as trustee for the all-inclusive trust deed.
But for simplicity, we refer only to Wright throughout this
opinion.

NA (Chase) and denying Wright's motion for summary judgment. She also challenges the district court's award of attorney fees to Chase. We affirm.

¶2 In 2004, Daniel and Eden Ellingson agreed to purchase Wright's home. The Statement of Settlement, dated June 25, 2004, indicated that the parties agreed to a purchase price of $650,000, that Wright would provide a "New Loan" in the amount of $341,000 to the Ellingsons, and that the balance due from the Ellingsons, after a credit for interest and taxes, was $307,061.96. A promissory note (the first promissory note) and an all-inclusive trust deed (the AITD), also dated June 25, 2004, evidenced a secured debt to Wright in the amount of $341,000. The AITD indicated that it was "subject and subordinate to" a previous mortgage from Countrywide Bank, also in the amount of $341,000 (the Countrywide mortgage). The AITD further provided, "Nothing in this Trust Deed, the Note, or any deed in connection herewith shall be deemed to be an assumption by the Trustor of the [Countrywide mortgage]."

¶3 Another promissory note (the second promissory note) and trust deed (the $309,000 trust deed), both dated August 11, 2004,[3] were drafted to secure the additional $309,000 debt owed to Wright and her ex-husband as joint tenants. The promissory note provided that the full $309,000 would be due five years from the date of the note. The $309,000 trust deed was not recorded until October 2005. Wright maintains that she was unaware of these two instruments until after 2009.[4]

---

3. Although both documents are dated August 11, 2004, Eden Ellingson indicated in her deposition that she did not sign the trust deed until October 6, 2005, when it was notarized, and that she did not remember when she signed the promissory note.

4. Wright's ex-husband, Travis Wright, handled the details of the sale to the Ellingsons.

¶4  In August 2004, the Ellingsons borrowed $400,000 from Chase.[5] Chase recorded a trust deed securing the loan on August 12, 2004. From that loan, $333,667.07 was remitted directly to Countrywide to pay off the balance remaining on the Countrywide mortgage at that time. An additional $7,332.93—the difference between the $341,000 secured by the AITD and the payoff amount of the Countrywide mortgage—was disbursed to Wright. By virtue of these payments, Chase believed that the AITD had been satisfied and that its trust deed would be in first position.

¶5  The Ellingsons made no additional payments to Wright and subsequently filed for bankruptcy. On April 29, 2011, Wright filed a notice of default and sought to foreclose the AITD. Chase demanded that Wright release the AITD based on the satisfaction of the Countrywide mortgage, but she refused. Chase then filed a complaint against Wright, requesting that the court order Wright to release the AITD or, alternatively, that the court equitably subrogate the AITD to Chase's trust deed.

¶6  The parties filed cross-motions for summary judgment. Because the AITD refers to both a new loan from Wright in the amount of $341,000 and the Countrywide mortgage, also in the amount of $341,000, Wright asserted in the district court that the AITD "references and secures a total debt of $682,000." Chase, on the other hand, argued that the AITD secured only $341,000 of the purchase price and that Wright was to use that $341,000 to pay off the Countrywide mortgage. According to Chase, the balance of the purchase price was secured by the $309,000 trust deed, which was recorded after Chase's trust deed. The district court granted Chase's motion and denied Wright's, concluding that "[w]hen the Countrywide loan of $341,000 was paid off, it also satisfied the promissory note and

---

5. The loan was actually obtained from Washington Mutual Bank, Chase's predecessor in interest, but for simplicity, we refer to both entities as Chase.

trust deed recorded for $341,000 by virtue of being an all inclusive trust deed." The district court accordingly entered judgment declaring that the AITD was "invalid and of no further force and effect" and awarding Chase attorney fees. Wright appeals.

## I. Summary Judgment

¶7    Wright asserts that the district court erred in granting Chase's motion for summary judgment and denying her motion. "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539.

¶8    In the district court, Wright argued that the AITD secured a total debt of $682,000—a $341,000 obligation to Wright and an additional $341,000 obligation equal to the amount owing on the Countrywide mortgage. On appeal, she instead states that the AITD *should have* been drafted in this way but acknowledges that, as prepared, the AITD secured "only . . . the $341,000 [promissory note]." Nevertheless, she asserts that the $341,000 promissory note "requires the Ellingsons to pay Wright, and Wright alone" and that no provision in the note or the AITD permitted the Ellingsons to satisfy their obligation under those instruments by paying off the Countrywide mortgage on Wright's behalf.[6]

---

6. As far as we can tell, this variation of Wright's argument appeared for the first time on appeal, but because Chase has not challenged the argument as unpreserved, and because Wright's argument is, admittedly, complicated, we will assume that the argument is preserved. We do not, however, address Wright's unpreserved argument regarding alleged mistakes made by the title company.

¶9     The district court determined that "by virtue of being an all inclusive trust deed," the AITD was satisfied when Chase paid off the Countrywide mortgage. We agree and hold that this is so even under Wright's reframed argument that the first promissory note and the AITD required the Ellingsons to pay Wright directly rather than Countrywide.

¶10     An all-inclusive trust deed or

> wraparound mortgage may be defined as a second mortgage which includes or "wraps around," but does not assume or extinguish the amount of an obligation under a prior mortgage on the property conveyed, with the buyer-wraparound mortgagor's payments being calculated on the aggregate, plus interest, of the seller-wraparound mortgagee's outstanding first-mortgage obligation plus the balance of the purchase price owed by the buyer-wraparound mortgagor.

James L. Isham, Annotation, *Validity and Effect of "Wraparound" Mortgages Whereby Purchaser Incorporates into Agreed Payments to Grantor Latter's Obligation on Initial Mortgage*, 36 A.L.R. 4th 144, § 2[a] (1985) (footnote omitted); *see also id.* § 1[a] n.1 (indicating that "'wraparound mortgage,' . . . 'all-inclusive mortgage,' 'hold harmless mortgage,' [and] 'overlapping mortgage'" are synonymous). Here, rather than secure the entire amount of the purchase price using an all-inclusive trust deed, the parties drafted a promissory note covering the amount of the Countrywide mortgage and secured it with the AITD. They then drafted a second promissory note and trust deed to secure the rest of the purchase price. This $309,000 trust deed, despite being dated the day before Chase's trust deed was recorded, was ultimately recorded in second priority to the trust deed securing Chase's loan to the Ellingsons, indicating the parties' intent that Wright's interest in the remaining $309,000 be subrogated to Chase's mortgage.

¶11 Wright's argument essentially asks that the funds paid to Countrywide on her behalf be credited against the second promissory note rather than the first promissory note, leaving intact her first priority interest under the AITD. While we acknowledge Wright's point that no provision in the $341,000 promissory note explicitly permitted the Ellingsons to pay Countrywide directly rather than Wright, the parties' use of an all-inclusive trust deed, as well as their reference to the Countrywide mortgage in the AITD, directly links payment of the Countrywide mortgage to satisfaction of the first promissory note.

¶12 "The principal defining characteristic of a [wraparound mortgage] is the 'wrapping' of the existing debt owed by the seller to a prior seller or lending institution. The new buyer obligates herself or himself to the seller, who in turn remains obligated to pay the existing mortgage debt." *Adams v. George*, 812 P.2d 280, 282 (Idaho 1991). "[I]n the usual wraparound situation, the seller-wraparound mortgagee remains primarily responsible for paying his prior first mortgage, and makes payments on such first mortgage out of the amounts forwarded to him by the buyer-wraparound mortgagor." Isham, 36 A.L.R. 4th 144, § 2[a]. Thus, even if the Ellingsons had used the Chase loan to pay Wright directly, Wright would have been obligated, consistent with the AITD, to use those funds to pay off the Countrywide mortgage and she would be in the same position she is in now.

¶13 Furthermore, the parties' explicit declaration that "[n]othing in this [AITD or promissory note] . . . shall be deemed to be an assumption by the Trustor of the [Countrywide mortgage]" indicates that the parties did not anticipate that the Ellingsons would be required to pay off the Countrywide mortgage in addition to paying off the first promissory note. The second promissory note and its accompanying trust deed confirm this, as they secure the remainder of the purchase price

owed to Wright in excess of what was owed to Countrywide—$309,000.[7] Indeed, if the Ellingsons were required to pay the total $341,000 owed to Wright under the first promissory note in addition to the funds already remitted to pay off the Countrywide mortgage, they would ultimately end up paying approximately $24,667 more than the contracted purchase price of the home.

¶14　"[W]hen [a] debt is paid . . . the lender no longer has a legitimate interest in the security . . . ." *Hector, Inc. v. United Sav. & Loan Ass'n*, 741 P.2d 542, 545 (Utah 1987); *see also* 55 Am. Jur. 2d *Mortgages* § 318 ("[A] mortgage cannot survive the extinction of the debt."). Thus, because the parties' use of an all-inclusive trust deed demonstrated their intent that repayment of the $341,000 promissory note be used to pay off the Countrywide mortgage, the Ellingsons' action in paying Countrywide directly had the effect of extinguishing the debt on the $341,000 promissory note. Accordingly, the district court did not err in declaring the AITD to be "of no further force or effect" and in granting Chase's motion for summary judgment.

## II. Attorney Fees

¶15　Wright next argues that the district court erred in awarding Chase its attorney fees pursuant to Utah Code section 57-1-38. "Generally the grant or denial of attorney fees is left to the district court's sound discretion. However, to the extent that the [court's ruling] depends upon an interpretation of the applicable statute, the district court's determination about what

---

7. Despite Wright's implicit assertion that payment of the Countrywide mortgage should be credited against the portion of the purchase price secured by the second promissory note, Wright has since assigned the second promissory note and trust deed to her mother to settle a debt owed by Wright's ex-husband, and Wright's mother has made demand on the Ellingsons to pay the note.

the law requires is reviewed for correctness." *Warner v. Warner*, 2014 UT App 16, ¶ 16, 319 P.3d 711 (citations omitted).

¶16    Utah Code section 57-1-38 provides that

> [a] secured lender . . . who fails to release the security interest on a secured loan within 90 days after receipt of the final payment of the loan is liable to another secured lender on the real property or the owner or titleholder of the real property for . . . reasonable attorneys' fees and court costs.

Utah Code Ann. § 57-1-38(3) (LexisNexis 2010). Nevertheless, an award of attorney fees for failing to release a trust deed "is penal in nature and . . . is not meant to penalize one who honestly, though mistakenly, refuses to release or discharge [the trust deed] because he believes that there has been no full satisfaction" of the debt. *Shibata v. Bear River State Bank*, 205 P.2d 251, 254 (Utah 1949) (discussing the propriety of a fee award against a party who fails to release a mortgage); *see also Hector*, 741 P.2d at 545 (indicating that the statute governing release of mortgages is "similar in wording and purpose" to the statute governing release of trust deeds). Thus, a party's good faith in failing to release a trust deed is "an affirmative defense to an action brought under" section 57-1-38. *See Hector*, 741 P.2d at 545 (considering an award of attorney fees under the predecessor statute to section 57-1-38).

¶17    Wright maintains that she should not be required to pay attorney fees because she acted in good faith in refusing to release the AITD. However, parties are required to plead affirmative defenses in their responsive pleading. *See* Utah R. Civ. P. 8(c). Although Chase requested attorney fees pursuant to Utah Code section 57-1-38(3) in its complaint, Wright did not raise good faith as an affirmative defense in her answer, and we are not aware of any attempt by Wright to amend her answer.

Furthermore, the district court observed that "none of the 'facts' set forth in [Wright's] memorandum" in opposition to the award of attorney fees "are supported by any citation to the record, and no affidavit has been submitted." Thus, Wright waived her good-faith defense, and the district court properly granted attorney fees to Chase. *See id.* R. 12(h).

## III. Conclusion

¶18    We conclude that the first promissory note was satisfied when Chase paid off the Countrywide mortgage and remitted the balance of the $341,000 to Wright. Accordingly, the district court correctly granted summary judgment in favor of Chase. Furthermore, because Wright failed to plead good faith as an affirmative defense to an award of attorney fees, the district court did not err in awarding Chase its fees. Because Chase was awarded its fees in the district court and requested fees on appeal, Chase is also entitled to an award of its fees incurred on appeal. *See Pack v. Case*, 2001 UT App 232, ¶ 39, 30 P.3d 436 ("When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)). Thus, we affirm the district court's rulings but remand for the district court to calculate an award of fees and costs on appeal.

———————