[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
In this case the plaintiff has moved for summary judgment. There is no real dispute as to the underlying facts the major dispute concerns the applicability of § 49-8 of the General Statutes and specifically subsections (b) and (c) of that statute which is entitled "Section 49-8. Release satisfied or partially satisfied mortgage or ineffective attachment, lis pendens or lien. Damages."
Subsections (b) and (c) reads as follows:
 (b) The plaintiff or his attorney shall execute and deliver a release when an attachment has become of no effect pursuant to section 52-326.
 (c) If the mortgagee or plaintiff or his attorney, as the case may be, fails to execute and deliver a release after thirty days from the date of a written request for a release of such encumbrance sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested or conveyed, carried or delivered by a private messenger or courier service, the mortgagee or plaintiff shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such thirty days or in an amount equal to the loss sustained by such aggrieved person as a result of such failure to execute and deliver a release, whichever is greater."
In January 1992 the plaintiffs were the owners of an office condominium unit in a common interest community known as Thimble Creek Office Condominium. The defendant Anthony Papa brought a declaratory judgment action in which the plaintiff were parties. CT Page 3847 This action sought to determine the interest of the parties and others in an easement of the defendant's that runs over condominium land in which as noted the plaintiffs jointly own a condominium unit. The defendant filed a lis pendens in connection with the declaratory judgment action which was brought in early 1992. On April 28, 1992 the lis pendens was discharged, on May 11, 1992 the plaintiffs through counsel demanded a release of the lis pendens. In response on May 19, 1992 the attorney representing the defendant wrote to plaintiff's counsel wherein he indicated he had filed a notice of intent to appeal the discharge of the lis pendens pursuant to Practice Book § 4002 and that therefore he would not release the lis pendens. On November 28, 1994 a judge ruled in response to a summary judgment motion brought by Thimble Creek in the declaratory judgment action that it was not necessary to name the individual owners of Thimble Creek as a condition precedent to success on the merits of the case or to establish jurisdiction. In light of that ruling on December 22, 1994 the defendant released the lis pendens against the plaintiffs and withdrew the declaratory judgment against them.
This action was then commenced in February of 1995 with a return date in March of 1995. The plaintiffs, as noted, have brought suit under § 49-8(c) of the General Statutes and the plaintiff have now moved for summary judgment. relying on the penalty provisions of the statute each plaintiff makes a claim for damages in excess of $25,000.
The standards for granting summary judgment are well known. If a genuine issue of fact exists the court cannot try it. The dispute between the parties largely involves the resolution of legal questions.
The plaintiffs' claim is quite straight forward. A demand for release of the list pendens was made after a court discharged it in April of 1992. In fact the lis pendens was not discharged until December 1994. Using the statutory language and simple mathematical calculations the plaintiffs move for summary judgment. The defendant raises several arguments against the plaintiffs' claim.
1.
From the submissions made by the plaintiffs in their motion for summary judgment it would appear that the defendant is correct CT Page 3848 about one factual contention that he makes. The plaintiffs at this point are not making a claim for actual loss or damages as a result of the filing of the lis pendens. They do not claim that lis pendens prevented them from selling their property or otherwise interfered with their use of the property or their ability to put their property to a more profitable use.
They claim subsection (c) by its terms doesn't require proof of actual loss. Section 49-8(c) says that unless there is a release within thirty days of a request to do so the liability in damages "to any person aggrieved" shall be "at the rate of two hundred dollars for each week after the expiration of such thirty days or in amount equal to the loss sustained by such aggrieved person as a result of such failure to execute and deliver a release, whichever is greater."
The defendant argues that in order to claim the statutory penalty of two hundred dollars per week a plaintiff must be "aggrieved" which means that the plaintiff must show some actual loss.
The defendant maintains § 49-8(c) is a penal statute and must be strictly construed. A statute need not impose a term of incarceration or a criminal fine to be defined as "penal" for purposes of statutory construction. Cases have held that a statute that makes a party shown to have committed a wrong liable to the person wronged without reference to the damage inflicted by the commission of the wrong is penal. State to Use of Rogers, 3 So.2d 816,818 (Miss, 1941). One case framed the question in terms of trying to ascertain the legislature's purpose. A statute is penal if it's true object is to protect the public generally and where an individual allowed recovery under a statute can receive a recovery for a wrong greatly exceeding the actual loss "that circumstance is indicial of penalty rather than compensation" Zuest v. Ingra,45 A.2d 810, 812-813 (N.J., 1946)
This statute even if some loss to show aggrievement is proven can provide a recovery that greatly exceeds any actual loss suffered. If some loss need not be shown then of course any recovery wouldn't be related to loss at all but would be in the nature of a strict penalty. On the other hand the statute does talk in terms of allowing an individual to recover actual damages in excess of what might be called the statutory penalty of two hundred dollars per week. Frankly, to call this statute a penal statute as an aid to interpret the word "aggrieved' is not much CT Page 3849 help since as noted even if some loss need be shown to achieve that status the two hundred dollar per week penalty could still greatly exceed any actual loss. Thus giving a strict reading to the word "aggrieved" because the statute is called penal does not accomplish much in terms of protecting large, identifiable classes of people from a harsh reading of the statute.
The defendant goes on to note that the word "aggrieved" is defined in Black's Law Dictionary, 5th ed 1989 as "having suffered loss or injury; damnified, injured." Also the word aggrieved is a word of art in administrative appeal cases of various sorts; it carries with it the notion of a party having suffered an ascertainable loss, Local 1303 Local 1379 v. Folk, 191 Conn. 173,176 (1983). These latter cases aren't very helpful since they really involve questions of standing to pursue the appeal and the word "aggrieved" and how it is defined in those cases doesn't have much to do with questions of interpretation of the word in a statute having nothing to do with this area of the law.
It could be argued that if the word "aggrieved" in §49-8(c) does not connote some actual loss or damage as being ancillary to any claim for the statutory penalty why was it used in the statute at all. In other words the statute could have said if the request to issue the release isn't honored within thirty days "damages shall be recoverable at the rate of two hundred dollars for each week etc. . . .", or the statute could have said if the release is not filed within thirty days "the owner of the property shall recover" . . . the damages as described in the remainder of subsection (c). The defendant also notes the language of § 49-13 which provides "the person owing the property or the guilty in the property may bring a petition to the Superior Court asking the court to discharge a lis pendens which has become of no effect. The statute concludes by saying: "The plaintiff may also claim in the petition damages as set forth section 49-8, if he (sic) is aggrieved by the failure of the defendant to execute the release therein prescribed." This basically underlines for the defendant. the argument that the word "aggrieved" and the whole last phrase of the just quoted sentence from § 49-13 is superfluous unless it means a plaintiff must have suffered some actual loss before that plaintiff can make a damage claim.
The difficulty with the defendant's argument is the fact that the history of the wording of the statute doesn't lend much support to it. When this statute was originally passed in 1869 it was CT Page 3850 directed solely at the release of mortgages. That statute, Public Acts 1869, c. 16 read in relevant part that where there was a failure to provide a release within thirty days after a request to do so, the person who fails to do so "shall forfeit and pay to any person aggrieved the sum of five dollars for each week of such refusal. . . ." The statute remained the same over the years except for changes in the amount of the weekly penalty. In the 1979 the statute provided for a weekly penalty of "fifty dollars for each week after the expiration of such thirty day period but not exceeding in the whole the sum of one thousand dollars". In 1979 the statute was amended so that in 1981 § 49-8 provided that the "person aggrieved" would receive one hundred dollars per week after the first thirty days not to exceed five thousand dollars and for the first time provided that the aggrieved person could also recover for any "loss sustained" and would receive the greater of the two amounts.
The point is that since the language "any person aggrieved" remained constant from 1869 to 1979, it must be presumed to have retained the same meaning over that period and the fact that after 1979 the aggrieved party could sue for the actual loss sustained would not permit a change in the definition of "aggrieved." Prior to 1979 the statute was a purely penal statute and it doesn't make much sense to say that before the sum of five dollars per week could be recovered under the 1869 statute for example the legislature intended the plaintiff had to show some actual loss. I think a more sensible reading of the word "aggrieved" which would not make it superfluous is to examine § 49-13 which as noted provides for the discharge of mortgages or of ineffective attachments, lis pendens or lien by means of a petition filed in Superior Court. In subsection (a) of § 49-13 the statute reads that the petition may be filed by "the person owning the property or the equity in the property." The next immediate sentence says "the plaintiff may also claim in the petition damages as set forth in § 49-8. . . ." In other words the harm occurs when someone with an appropriate interest in the land cannot secure a release of a mortgage or lis pendens. The word "aggrieved' is meant to define the class of people who have that appropriate interest in the land — i.e. owners of the property or the equity in the property as opposed to tenants or others have some connection to the property but who do not have such an ownership interest in the property. Therefore my interpretation of § 49-8 is that a claimant under the statute need not prove any actual loss in order to recover what might be called the penal sum of two hundred dollars a week in lieu of actual damages. The word "aggrieved" in the statute which is a CT Page 3851 predicate to bringing any damage claim does not require an initial showing of actual damages. Nor is there any logical way to say the definition of "aggrieved" the defendant wishes the court to adopt applies only when a plaintiff makes a claim for the statutory penalty as opposed to actual damages. The word "aggrieved" existed in the statute before actual damages were provided for. The term applies to both types of claim by the very wording of the statute. In that sense the defendant's argument would require the court to say the statute means a plaintiff must prove some actual damages before he or she makes a claim for any actual damages. I do not accept that argument.
2.
I do not accept the defendant's position that § 49-8 only applies to mortgages and the release of lis pendens associated with mortgages. The statute as originally enacted did apply only to the release of mortgages. But the present statute has a much broader reach. Subsection (b) doesn't say the "mortgagee" or his or her attorney shall execute and deliver a release when the mortgage is satisfied. It says "the plaintiff or his (sic) attorney shall execute and deliver a release when an attachment has become of no effect pursuant to section 52-322 or section 52-324 or when a lis pendens or other lien has become of no effect pursuant to section52-326." Sections 52-322 and 52-324 talk of the lodging of certificates in the town clerk's office when "the estate of any person has been attached in any proceeding." (§ 52-322); Section52-324 talks about filing the necessary certificate regarding an attachment when a "plaintiff has withdrawn his suit or has been non-suited or final judgment has been rendered." Section 52-324
talks about filing the necessary certificate regarding an attachment when a "plaintiff has withdrawn his suit or has been non-suited or final judgment has been rendered. . . ." Section 49-8
specifically uses the term lis pendens as does § 52-326 and the latter statute refers to § 49-51 which talks about any invalid lien that might be placed upon property; for example it would apply to mechanics liens, Woronecki v. Trappe, 228 Conn. 574 (1994).
3.
The defendant also argues that the statutory penalty of §49-8(c) should not apply to someone whose failure to release a lis pendens is based on a good faith belief that the lis pendens need not be released. He cites several cases that have applied this principle under mortgage release statutes that provide for CT Page 3852 penalties upon failure to release a mortgage, Judge DevelopmentCorp. v. Bank of New York, 814 F. Sup. 384 (DVT 1993), Shibata v.Bear River State Bank, 205 P.2d 251 (Utah 1949), Hector Inc. v.United Sav. Loan Assn., 741 P.2d 542 (Utah, 1987).
The defendant argues that a good faith defense is appropriate here. If the defendant, through counsel, were to have released the lis pendens, he maintains that it is likely that any appeal of the trial court's discharge of the lis pendens would have become moot. Basically the defendant was placed in the position of either releasing the lis pendens and thereby risking the transfer of the land, or sustaining the lis pendens and thereby running the risk incurring heavy statutory penalties.
The plaintiff tries to distinguish the cases cited by the defendant by pointing to the fact that they involved mortgage release statutes and unlike § 49-8(c) these statutes were penal in nature. He also appears to try to distinguish the JudgeDevelopment case and the Hector case by saying the factual claims and findings by the courts in those cases were found either not to support the application of the principle (Hector) or clearly supported it so that there was no bad faith issue involved (JudgeDevelopment) thus the principle qua principle should not apply here. I cannot really follow this argument. The applicability of the good faith defense does not depend on the particular factual scenarios found in other cases and the only "bad faith" required to raise the defense is failure to deliver the release.
The first question should be is § 49-8(c) a penal statute. According to cases I cited earlier in this decision when first passed the statute was penal in nature because of the fact that it did not attempt to compensate for actual loss but imposed what was in effect a fine or penalty. The statute has since been amended to allow a claim for actual damages. I do not think it is appropriate to use an either/or analysis in deciding whether this statute is penal in nature. Insofar as it provides for the recovery of actual damages it is not penal in nature. "Aggrieved" in subsection (c) as not requiring the plaintiff to show actual loss as a predicate to making a claim for the two hundred dollars per week penalty provided for in the statute. Given that and the fact that a plaintiff having suffered no actual loss can make a claim under the statute for monetary sums that could be very large in amount, that aspect of the statute, when it is allowed to function in such a way is certainly penal in nature. Furthermore earlier versions of this statute provided for a cap on the amount of the penalty — there was CT Page 3853 a cap of five thousands dollars in the 1981 statute. That has now been removed so it is difficult to say that this statute is not penal when a statutory penalty is sought by a party who may not even have suffered damages.
Also it is difficult to understand how it can be said that this good faith principle should apply to mortgage release statutes but not to statutes providing for the release of liens or lis pendens. The harm sought to be dealt with is the same because failure to release the mortgage, lien or lis pendens could prevent transfer of the property and the reasons for allowing the good faith defense are the same.
The next questions becomes what does a good faith defense really man and how can it be presented. Here the attorney for the defendants submitted an affidavits claiming that in refusing to supply a release and in taking an appeal on the trial court's discharge of the lis pendens he acted in good faith to protect his client's interest. The plaintiff protests vigorously to the very filing of the affidavits relying on the provisions of Rule 3.7 of the Rules of Professional Conduct. The rule cautions against a lawyer acting as a witness. But the defendants presumably acted upon the advice he received from his lawyer. The penalty and damages provision of § 49-8(c) explicitly provide that they become operative: "If the mortgages or plaintiff or his attorney, as the case may be, fails to execute and deliver a release after thirty days from the date of a written request for a release of such encumbrance. . . ." If the good faith defense is to have viability in some circumstances, which I believe it should, then an exception is warranted to Rule 3.7 under subsection (3) of that rule which provides that there is an exception where "(3) Disqualification of the lawyer would work substantial hardship on the client." Under the circumstances of a case such a this the lawyer is the only person who can provide the basis for a good faith defense at the summary judgment stage. It may be that at trial the lawyer who has submitted such a defense should not represent the client especially before a jury but that is far from saying the defense cannot be presented when a motion for summary judgment is sought.
Since the particular operation of the statute on the facts of this case makes it penal in nature, the question becomes what is the basis for allowing the "good faith" defense. In the mortgage release cases that discuss the good faith defense the following statement is representative: CT Page 3854
 "The above statute is penal in nature and should be strictly construed. It is not meant to penalize one who honestly, though mistakenly, refuses to release or discharge a mortgage of record because he (sic) believes there has been no full satisfaction." Shibata v. Bear River State Bank, 205 P.2d at page 254.
In Shibata the court went on to note that the defendant bank relied "upon the advice of an attorney" honestly believing it had valid and subsisting mortgages, Id. page 254. Since the lawyer for the defendant here is acting as his client's agent in filing the good faith affidavit it is presumed that the client himself is offering the affidavit as part of a good faith advice of attorney defense. Where, however, the attorney's advice is being offered for the good faith defense Shibata may go too far. In other words in this context good faith means an absence of malice or ill will or pretext but query as to whether the lawyer must also have a reasonable basis for his or her advice. That is, here did the lawyer have a reasonable basis to conclude the action of the trial court in discharging the lis pendens was erroneous. Thus, if there was no such reasonable basis and an appeal was filed anyway and the necessity of the filing of the appeal is being used as the basis to deny the request to discharge the lis pendens this to me at least would present some if not conclusive evidence to preclude the good faith defense. But this precise issue was not addressed by the parties. Also once there is an affidavit by client or attorney raising a good faith defense it is not clear to me where the burden of going forward should be to rebut the good faith claim on the grounds that the underlying appeal itself was frivolous. In any event it may be that in most instances such questions will present a mixed question of law and fact not readily resolved by a motion for summary judgment. I conclude the good faith defense raised here is a sufficient basis to deny the motion for summary judgment.
4.
For me at least an extremely complicated issue has been presented by the defendant's argument that § 49-8(c) and its penalty and damage provisions do not apply to the defendant because the requirements of subsection (b) have not been met. That subsection reads as follows:
"(b) The plaintiff or his (sic) attorney CT Page 3855 shall execute and deliver a release when an attachment has become of no effect pursuant to section 52-322 or section 52-324 or when a lis pendens or other lien has become of no effect pursuant to section 52-326."
Section 52-322 reads as follows:
 Sec. 52-322. Discharge of attachment; filing of certificate; record. When the estate of any person has been attached in any proceeding wherein a certificate of such attachment or a copy of the writ or proceeding is required by law to be filed in the office of the town clerk, and the plaintiff therein has received satisfaction for his claim, or final judgment has been rendered against him thereon, or when for any reason such attachment has become of no effect, such plaintiff of his attorney, at the request of any person interested in the estate attached or in having the attachment lien removed, shall lodge a certificate with such town clerk that such attachment is dissolved and such lien removed. Each such certificate shall be recorded at length in a book kept for that purpose by such clerk as a part of the land records of the town wherein the property affected by the release is located or wherein the certificate of attachment was filed.
Section 52-324 reads:
 Sec. 52-324. Certificate of dissolution on withdrawal of suit. If an attachment, such as is set forth in section 52-322, has been made and the plaintiff has withdrawn his suit or has been nonsuited or final judgment has been rendered against him, or if such suit has not been returned, or if for any reason such attachment has become of no effect, the clerk of the court to which such suit has been made returnable shall, upon the request of any person interested, issue a certificate in accordance with the facts, which certificate CT Page 3856 may be filed in the office of the town clerk, and shall by such town clerk be noted on the margin of the record where such attachment is recorded.
Section 52-326 says:
 "The provisions of sections 52-322 and 52-324
shall apply, mutatis mutandis, to any lis pendens recorded according to the provisions of section 52-325 or any invalid lien sought to be discharged under section 49-51."
It would be an understatement to say that the answer to this question is not clear. Insofar as the parties make a purely linguistic analysis I don't believe this is a satisfactory solution. In other words the defendant points out § 52-326
must be strictly interpreted and the lis pendens was discharged pursuant to § 52-325(d) so § 52-326 does not apply because § 52-325d is not referred to in § 52-326. The plaintiff argues the proper determination is whether §52-325(d) relates to the statutory scheme of § 52-326.
An initial problem is that subsection (b) of § 49-8 says a release shall be delivered "when an attachment has become of no effect pursuant to section 52-322 or section 52-324 or when a lispendens or other lien has become of no effect pursuant to §52-326." (emphasis added). Are attachments also lis pendens and also liens? Why was disjunctive language used?
But then when you go to § 52-326 it says "the provisions of sections 52-322 and 52-324 shall apply mutatis mutandis, (whatever that really means) to any lis pendens recorded according to the provisions of section 52-325. . . ." No disjunctive language is used in § 52-326.
When one examines § 52-322 and § 52-324 they first talk about situations where a claim has been satisfied or final judgment has been rendered (§ 52-322) or where a suit has been withdrawn or a plaintiff has been nonsuited or final judgment has been rendered against a plaintiff. Then both statutes use general language "when (or if) for any reason such attachments has become of no effect. If any one of these things occur certain certificates may be filed on the land records under these statutes. CT Page 3857
Going back to § 52-326 that statute says the provisions of § 52-322 and § 52-324 shall apply mutatis mutandis to any lis pendens recorded according to the provisions of §52-325. "Mutatis mutandis" in Blacks Law Dictionary Sixth Ed is defined as meaning "With the necessary changes in point of detail. . . ."
It would seem then that the language of § 52-322 and § 52-324 apply to lis pendens filed under § 52-325. Here the lis pendens was filed pursuant to § 52-325. And even though § 52-326 doesn't specifically mention § 52-325d
that statute provides the court may discharge a lis pendens for failure to give notice to all the required parties. Section 52-325(d) says: "If the court finds that such notice never became effective or has become of no effect" the court can issue and order declaring "the notice of lis pendens is invalid and discharged" in other words the lis pendens is of no effect. But as noted §§ 52-322 and 52-324 both use general language saying their provisions apply when and if the attachment (which mutatis mutandis applies to lis pendens) is of no effect. In general terms then it could be said here we have a lis pendens held to be of no effect pursuant to § 52-326, giving that statute a broad reading.
There is, however, one problem with any such lock step analysis. Where is the right of appeal for a party whose lis pendens is discharged for what might be considered procedural defects under § 52-325d. As noted the initial language in §§ 52-322 and 52-324 both refer to situations where an attachment has been placed on property and the plaintiff who placed the attachment has had final judgment rendered against it or the claim has been satisfied or withdrawn. The prejudgment remedy statutes, § 52-278 (a) et seq and Section 52-325(a) providing for a hearing for discharge of lis pendens both entail some form of a due process hearing with a right to appeal, §52-279, § 52-325(c) where the court has a right to stay any order. The hearing process under the statutory scheme involves some weighing of the underlying merits of the claim which prompted the prejudgment remedy application or lis pendens.
Section 52-325(d) seems concerned with such mattes as appropriate filing and notice of the lis pendens under §52-325, proper service; at least here the trial court discharged the lis pendens on such a basis. Yet § 52-325(d) does not provide CT Page 3858 for any appeal in a situation where if the trial court made an error and by its action the lis pendens is of "no effect", not only would the party who had filed the lis pendens lose all the protections that a lis pendens could give but he or she would be subjecting him or herself to large penalties under § 49-8(c) if he refuses to release the lis pendens thus rendering any appellate rights moot. All of this without the right of appeal and no opportunity to request a stay with an appropriate bond attached to the stay to indemnify any adverse party injured by the stay.
At this point I have real problems with the statutory scheme if it interpreted as allowing an action on under § 49-8(c) where a lis pendens has been discharged pursuant to §52-325(d).
On the other hand I recognize there are also countervailing considerations. If the trial court discharges the lis pendens on the basis of Section 52-325d that offers no comfort to the party demanding a release who is refused his or her demand and suffers actual damages. The party may have other ways to sanitize the land records yet is denied the statutory relief provided for in Section 49-8. But it could be said why wouldn't there be common law remedies available at lease to a party suffering actual harm?Skorpios Properties Ltd. v. Wage et al, 172 Conn. 152, 155 (1976) indicate those remedies still may be resorted to by injured parties in these situations.
Therefore my constitutional problems with the statutory scheme remain but I am reluctant to deny the motion for summary judgment on this specific ground or to have any such decision regarded as the law of the case. Since the constitutionality of the statutory scheme is in issue I do not believe the record before me is adequate to decide it. I have not been presented with the legislative history and neither side really addressed the constitutional implications. I see no need to decide this question at this point since I have denied the motion on a separate ground.
5.
Finally I certainly believe there is a genuine issue of material fact as to whether the defendant can be sued in his individual capacity. The original easement action was brought in the name of the defendant as trustee. The lis pendens lists him as trustee. In his motion to discharge the notice of lis pendens the CT Page 3859 plaintiff here used the heading of the case "Anthony A. Papa, Trustee". In the May 11, 1992 letter requesting a release of the lis pendens the attorney for the present plaintiff referred to the case in part as "Re Anthony A. Papa, Trustee".
The plaintiff makes a point of saying that the body of the letter requesting the release of the lis pendens says to his lawyer "we request that your client execute and deliver" (a release). Could not the lawyer and did not the lawyer represent him, Papa, as Trustee?
Also the plaintiff did bring suit against Mr. Papa individually and as Trustee. In the denial, it is true, the defendant made no qualification or limitation of the defendant doing so as trustee or individually. It is also true that in responding to the request to admit the defendant admitted paragraphs 1 and 6 of the complaint. But the complaint was brought against Mr. Papa individually and as trustee — ergo argues the defendant this is an admission that cannot be withdrawn. I will not accept such abstruse, technical and argument by indirection to say as a matter of law a party is deprived of the right to defend himself especially where there are other factors to indicate there may be a reasonable grounds for a defense — here that Mr. Papa did not file or pursue the original easement action in his individual capacity. There is a genuine issue of material fact on this matter.
The motion for summary judgment is denied.
Thomas Corradino, Judge