2013 UT App 215

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF Z.Z., S.Z., S.Z., R.Z., AND J.Z., PERSONS UNDER EIGHTEEN YEARS OF AGE.

K.Z. AND V.Z.,
Appellants,
*v.*
STATE OF UTAH,
Appellee.

Amended Opinion[1]
No. 20110678-CA
Filed September 6, 2013

Eighth District Juvenile, Duchesne Department
The Honorable Larry A. Steele
No. 167143

Marea A. Doherty and Herbert W. Gillespie,
Attorneys for Appellants
John E. Swallow and John M. Peterson, Attorneys
for Appellee
Martha Pierce, Guardian ad Litem

JUDGE GREGORY K. ORME authored this Amended Opinion, in which JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1 K.Z. (Father) and V.Z. (Mother) appeal from an order of the juvenile court terminating their parental rights in their five children and from a subsequent order denying their motions for a new trial. We affirm.

---

1. This Amended Opinion supersedes the court's November 8, 2012 Opinion in this matter. That Opinion is hereby vacated and is of no force, effect, or precedential value.

BACKGROUND

¶2    The parents have an extensive history with the Utah juvenile court system and with the Utah Department of Child and Family Services (DCFS), dating as far back as 1997. They have had other children permanently removed from their custody in the past,[2] and DCFS has opened sixteen cases involving the parents over the years. We outline only the facts relevant to this appeal.

¶3    DCFS filed a Motion for Expedited Placement and a Petition for Custody in July 2009, alleging that the parents were habitual users of illegal drugs[3] and that their children should be removed from their home. The parents were provided notice of the scheduled shelter hearing. Father was present at the hearing, but Mother failed to appear and a warrant was issued. At that time, the children were placed in the legal custody of DCFS but were unable to be placed in its physical custody because their whereabouts were unknown. The next month, both parents failed to appear for a pretrial hearing. The warrant for Mother was continued in effect, and the issuance of a warrant for Father was taken under advisement.

¶4    Two weeks later, the parents again failed to appear for a pretrial hearing. Counsel for Mother reported that he had been unable to make any contact with her. The warrant for Mother was left in effect, and a warrant for Father was issued. Late in 2009, DCFS filed a motion to close the custody case because it had

---

2. The parents' rights to another child they had together were terminated earlier. During the investigation involving that child, three children that Mother had with a man other than Father were removed and placed with their biological father.

3. DCFS alleged that Mother used methamphetamine and that Father took unprescribed controlled medication. Additionally, DCFS claimed that there were two other drug users living in the home with the parents and the children.

become aware that the parents had fled to Colorado with their children.[4] Given the thrust of the parents' appeal, the terms of dismissal are of pivotal significance. DCFS moved the court "to terminate the State of Utah's custody and guardianship custody case." The motion, while reciting that the family had moved to Colorado, specifically requested that the court "retain jurisdiction in this matter in the event the family returns." The court granted the motion in January 2010, ordering that "the custody and guardianship foster care case be terminated . . . and that the Court retain jurisdiction in this matter."

¶5 A few months later, four of the children were back in Utah. DCFS took them into protective custody in April 2010. At that time, DCFS spoke to Mother on the phone but she would not disclose the whereabouts of the fifth child. DCFS then filed a new verified petition,[5] and a shelter hearing was held later that month. The fifth child was located and taken into DCFS's custody in May 2010. DCFS eventually served notice on the parents through publication, and Mother and Father were also both served with notice prior to the termination trial held in April 2011.

---

4. The parents characterize this as a routine relocation. "Fled" is the term used by the juvenile court in its findings of fact entered on May 25, 2011. On appeal, the parents have not challenged the juvenile court's findings.

5. The new petition and all subsequent pleadings and orders employed the same case numbers as were used in the proceeding commenced in 2009—the same case numbers as had been used in prior cases involving this family. As recounted in the findings of fact, the new petition "alleg[ed] the same facts as the July 2009 petition and alleg[ed] that the parents had fled from the State of Utah with the children after the Court had placed the children in the State's custody in July of 2009." Given the arguments advanced by the parents on appeal, it is noteworthy that the juvenile court's findings recite matter-of-factly that "[t]he instant case began on July 21, 2009."

¶6     Neither DCFS nor the juvenile court received any communication from the parents prior to the April 2011 trial date.[6] On the morning of trial, the court received a faxed note from Mother's Colorado counsel stating that the parents would not appear for the termination trial because of a conflicting criminal hearing involving Mother in Colorado. The parents, through their Utah counsel, moved for a continuance at that time, which the juvenile court denied.

¶7     The trial proceeded as scheduled, and the court entered an order on May 25, 2011, terminating the parents' parental rights. The parents filed motions for a new trial in June 2011. DCFS and the children's guardian ad litem objected on the basis that the parents had habitually failed to appear and did not request a continuance in advance of the actual day of trial. The juvenile court denied the motions for a new trial, and this appeal followed.

ISSUES AND STANDARDS OF REVIEW

¶8     On appeal, the parents argue that the juvenile court lacked subject matter jurisdiction to terminate their parental rights by reason of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as enacted in Utah. *See* Utah Code Ann. § 78B-13-101 to -318 (LexisNexis 2012).[7] "[J]urisdictional questions and questions of statutory interpretation are questions of law that we review for correctness." *In re P.F.B.*, 2008 UT App 271, ¶ 10, 191

---

6. The parents have been effectively and diligently represented by their counsel. Despite the absence of their clients, both counsel attended a pretrial hearing on April 28, 2010. At a further pretrial hearing in May, both parents were absent but, again, both counsel were present. Counsel raised a concern about notice to the parents, and the court continued the trial to a later date.

7. Because no material amendments have been made to the relevant statutes since the events in issue, we cite the most current version of the code as a convenience to the reader.

P.3d 49. We accept the validity of the juvenile court's underlying factual findings because the parents, as the appellants, have not challenged the juvenile court's findings, much less demonstrated that the findings are clearly erroneous. *See In re J.R.*, 2011 UT App 180, ¶ 2, 257 P.3d 1043 (per curiam).

¶9      The parents also argue that the juvenile court violated their due process rights when it denied their motions for a new trial. "Because a trial court has broad discretion to grant or deny a motion for a new trial under rule 59 of the Utah Rules of Civil Procedure, we will reverse only if there is no reasonable basis for the decision." *In re Adoption of A.F.K.*, 2009 UT App 198, ¶ 17, 216 P.3d 980 (citation and internal quotation marks omitted). That said, "[w]hether a parent has been afforded adequate due process is a question of law, reviewed for correctness." *In re J.B.*, 2002 UT App 268, ¶ 7, 53 P.3d 968.

ANALYSIS

I. Subject Matter Jurisdiction

¶10      Section 78A-6-103 of the Utah Code vests the juvenile court with exclusive jurisdiction over all cases involving "a child who is an abused child, neglected child, or dependent child." Utah Code Ann. § 78A-6-103(1)(c) (LexisNexis 2012). Nonetheless, the parents' principal claim on appeal is that the juvenile court did not have subject matter jurisdiction to enter the order terminating their parental rights. The parents do not challenge the actions of the juvenile court leading up to January 2010 when the court, while specifically retaining its own jurisdiction, granted DCFS's motion to terminate the case. They argue, however, that the juvenile court, through its January 2010 order, "fulfill[ed], in its entirety, the conditions required to divest the juvenile court of exclusive ongoing jurisdiction, and thus subject matter jurisdiction in this matter." We disagree.

¶11 As a threshold matter, we first note—and both parties agree—that the juvenile court properly exercised jurisdiction under Utah Code section 78B-13-201 when it held the shelter hearing and ordered the children into the custody of DCFS in July 2009. A juvenile court in this state "has jurisdiction to make an initial child custody determination"[8] if "this state is the home state of the child[ren] on the date of the commencement of the proceeding." Utah Code Ann. § 78B-13-201(1)(a) (LexisNexis 2012). Because Utah was the children's home state when the proceeding commenced in July 2009, as it was at the earlier time when the Utah court made its initial custody determination as to some of the other children, *see supra* note 8, the juvenile court had exclusive, continuing jurisdiction over the custody determination it made at the July 2009 shelter hearing. *See* Utah Code Ann. § 78B-13-202(1) (LexisNexis 2012). While Mother and Father do not deny that the juvenile court originally possessed exclusive, continuing jurisdiction when it made the July 2009 determination, they assert that because they relocated with the children to Colorado after the July 2009 order was entered, Utah effectively ceased to be the proper forum in which to adjudicate their parental rights. They contend that DCFS's motion to terminate the custody case in December 2009 confirmed the impropriety of the juvenile court's continued jurisdiction after their move to Colorado and that the court's January 2010 order unequivocally divested the court of its exclusive, continuing jurisdiction.

---

8. It appears from the record that the July 2009 determination was the initial child custody determination, as that term is defined by the statute, for the two youngest children involved here, but it was not the initial custody determination for the older three. *See* Utah Code Ann. § 78B-13-102(8) (LexisNexis 2012) ("'Initial determination' means the first child custody determination concerning a particular child."). As to the older three children, the July 2009 determination was a subsequent modification of a prior initial custody determination over which the court had exclusive, continuing jurisdiction under section 78B-13-202. *See id.* § 78B-13-202(1).

¶12 If a court of this state has made a child custody determination consistent with section 201, the court has and retains exclusive, continuing jurisdiction over that determination until

> (a) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (b) a court of this state or a court of another state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in this state.

*Id.* § 78B-13-202(1)(a)–(b). Thus, the juvenile court retained jurisdiction over the July 2009 determination unless, as the parents contend, one of the two determinations from subsection 202(1) was made prior to the April 2010 proceedings.

¶13 It is clear from the record that no court of this state had made a subsection 202(1)(a) determination prior to the April 2010 proceedings, and there was certainly no basis for doing so. These children are lifelong residents of Utah—save for their brief furlough in Colorado—and their parents have a lengthy and involved history with the Utah juvenile court system. The family's temporary retreat to Colorado did not eliminate the significant connection that both the children and the parents have with this state, nor did it diminish the "evidence . . . available in this state concerning the child[ren]'s care, protection, training, and personal relationships." *See id.* § 78B-13-202(1)(a). Most importantly, neither the juvenile court nor any other Utah court made a determination that no significant connection existed and that substantial evidence was unavailable.

¶14   The parents premise their primary argument on subsection 202(1)(b), claiming that the juvenile court's January 2010 order determined that "the Parents and Children did not presently reside in this state." But a plain reading of DCFS's motion and the court's order shows that the juvenile court did nothing more than terminate the guardianship and custody case and retain its jurisdiction "in this matter." When Mother and Father took the children and headed for Colorado, DCFS could no longer provide services to the children and had no reason to keep its case file open. Accordingly, DCFS moved to terminate the case and represented in its motion that the family was in Colorado and being monitored by Colorado authorities. DCFS did not, however, state that the courts of Colorado had become involved, much less that Colorado had obtained jurisdiction over the July 2009 determination. Nor did DCFS assert that Utah had lost jurisdiction. Instead, and notwithstanding its request that the case be terminated, DCFS specifically asked the juvenile court to retain jurisdiction in the event that the family returned to Utah. The clear import of the motion was not to concede that Utah had lost its exclusive, continuing jurisdiction but rather that DCFS wanted to close out its case file while leaving the door open for continued proceedings should any of the family members return to Utah.

¶15   The parents seem to conflate the representations made in DCFS's motion with the juvenile court's order. The order—all four lines of it—did not adopt any of DCFS's statements as findings, and, critically, did not make a *determination* that "neither [a] child, nor a parent . . . resides in this state." *See id.* § 78B-13-202(1)(b). Instead, it merely ordered that the "custody and guardianship foster care case be terminated" while expressly providing that "the Court retain jurisdiction in this matter." From all that appears, then, the court simply terminated the case for the administrative convenience of DCFS while expressly retaining its own jurisdiction over the outstanding July 2009 determination for potential future modifications. Given that there is nothing in the record to indicate that a court of another state made a determination that qualifies as one made under subsection 202(1)(b), we conclude that no determination was made under subsection 202(1) and that the juvenile court consequently retained exclusive, continuing

jurisdiction over the July 2009 determination. Thus, the juvenile court's jurisdiction was not ended by operation of law and, especially given that jurisdiction was expressly retained by the court, its jurisdiction remained in full force and effect.

¶16    The juvenile court's retention of jurisdiction here is both proper and fully consistent with the scheme and philosophy of the UCCJEA. As explained in the official comment, "Jurisdiction attaches at the commencement of a proceeding. If State A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the State prior to the conclusion of [the] proceeding." Uniform Child Custody Jurisdiction & Enforcement Act § 202 cmt. (1997). Thus, an uncooperative set of parents cannot unilaterally divest the court of its exclusive, continuing jurisdiction by fleeing to another state during the pendency of a custody proceeding. *See id.* And along largely parallel lines, a court does not divest itself of jurisdiction when it allows DCFS to close out a case that lies dormant—albeit still alive and jurisdictionally sound—merely because the family absconded to another state. This is especially true where, as here, the court explicitly retains jurisdiction in its dismissal order. Were the law otherwise, conniving parents could easily render a custody proceeding null and void, and consequently destroy a court's jurisdiction, by rounding up their children and hightailing it to a neighboring state. The purposes and goals of the UCCJEA would be nearly impossible to accomplish because they would be subject to and entirely contingent upon the whims of parents and their level of willingness to be bound by the orders of a court properly possessing and exercising jurisdiction. Such a system would be untenable, and we decline to adopt a view of the statute that allows parents to unilaterally upend a court's proper exercise of jurisdiction by leaving the state while a proceeding is pending.

¶17    Finally, we emphasize that the April 2010 proceedings and subsequent termination of Mother's and Father's parental rights logically followed and were built upon the juvenile court's July 2009 determination. As previously stated, the court did not vacate the July 2009 determination in its January 2010 dismissal order, and

there was no reason to do so. The court had warrants out for both parents, it had a long history of dealings with the parents, and no court from another state was asserting jurisdiction. When the children resurfaced in Utah after their brief absence, both the court and DCFS simply pulled the same case off the shelf and picked up where things had left off,[9] with DCFS getting physical custody of the children and the case eventually culminating in the court's decision to terminate Mother's and Father's parental rights.

¶18     A court of this state that has made a custody determination consistent with Utah Code section 78B-13-201(1) maintains exclusive, continuing jurisdiction over that determination unless a subsequent determination is made pursuant to section 78B-13-202(1). *See* Utah Code Ann. § 78B-13-202(1)(a)–(b) (LexisNexis 2012). We conclude that the juvenile court retained exclusive, continuing jurisdiction over its July 2009 determination and that no determination under subsection 202(1) was made prior to the April 2010 proceedings. And of course none was made thereafter. We further conclude that a court does not divest itself of exclusive, continuing jurisdiction when it expressly retains jurisdiction in an order dismissing a pending case that can no longer be effectively managed because the parents relocate to another state before the matter can be resolved. Because the juvenile court's order expressly retained jurisdiction over the July 2009 determination and because that retention is consistent with the policies and terms of the UCCJEA, the court's exercise of jurisdiction over the parents from the April 2010 proceedings onward was every bit as appropriate as was the jurisdiction it exercised in the summer of 2009.

## II. Due Process

¶19     The parents argue that they were denied their due process rights when the April 2011 trial was conducted despite their

---

9. DCFS did file a new petition to bring the matter back before the court, but the new petition "alleg[ed] the same facts as the July 2009 petition" and the juvenile court considered it as part of the same "case [that] began on July 21, 2009." *See supra* note 5.

absence. They contend that the juvenile court abused its discretion when it denied their motions for a new trial.

¶20    "Proceedings to terminate parental rights must comport with the requirements of Due Process." *In re A.E.*, 2001 UT App 202, ¶ 14, 29 P.3d 31 (citation and internal quotation marks omitted). This right, however, is not boundless. The parents concede that "the juvenile court had no duty to ensure a parent's presence at a termination trial." While the parents were entitled to proper notice of the proceedings, "there is no absolute statutory or constitutional right to attend the trial" in child welfare matters, including termination proceedings. *See id.* (citation and internal quotation marks omitted). This court has held, in the context of a criminal sentencing hearing, that "[n]otice of the proceedings is alone sufficient to allow a defendant to exercise the right to be present by appearing, or to waive that right through voluntary absence." *State v. Wanosik*, 2001 UT App 241, ¶ 12, 31 P.3d 615, *aff'd*, 2003 UT 46, 79 P.3d 937.

¶21    The parents contend that they—especially Mother—were prevented from attending the April 2011 trial and should have been granted a continuance on the morning of trial. They ignore the fact that they were properly provided notice of the trial well before Mother's scheduling conflict arose in Colorado. Father's counsel accepted service on his behalf, and Mother was served in open court in Utah during a January 2011 pretrial hearing. The parents do not contest that they were provided notice and fail to explain how they were prevented from seeking a continuance in a timely fashion rather than on the very morning of their termination trial.

¶22    The circumstances of this case are even less compelling than the facts in *In re A.E.*, where we found a similar argument to be unpersuasive:

> [A.E.'s father] argues that because he was incarcerated and, therefore, not a free agent, the juvenile court had a duty to either assure his presence at trial, or not hold the trial in his absence. However, [A.E.'s father] has failed to show us how

> he exercised due diligence in attempting to be
> present for all stages of the trial, but was prevented
> from appearing by circumstances over which he had
> no control.

2001 UT App 202, ¶ 16 (citation and internal quotation marks omitted). Mother failed to submit any proof to the juvenile court indicating that she even attempted to reschedule her Colorado matter. And as noted, Mother failed to inform the Utah juvenile court of the conflict until the very morning of trial, even though she had been on notice of the trial date for nearly four months. Father's sole justification for missing the trial appears to be that "he was in attendance with [Mother] in the Colorado criminal proceeding." Therefore, both Mother and Father failed to show that they exercised any semblance of due diligence in attempting to be present for the termination trial in Utah or at least to seek a continuance in a timely manner.[10] Because we conclude that Mother's and Father's due process rights were not violated, it follows that the juvenile court did not err in denying the parents' motions for a new trial.[11]

---

10. The parents argue that we should extend *State v. Wanosik*, 2001 UT App 241, 31 P.3d 615, *aff'd*, 2003 UT 46, 79 P.3d 937, to parental termination proceedings. Such an extension would do them no good, as the rationale of *Wanosik* is inapplicable because the reason for the parents' absence in this case was not unknown. *See id.* ¶ 21.

11. Furthermore, even if we were to conclude that the parents' due process rights were violated,

> [t]he appellate court will only find prejudicial error
> after a review of the record demonstrates that there
> was a reasonable likelihood of a more favorable
> result for the [parents]. [W]e must review the record
> and determine whether there is a reasonable
> likelihood that the outcome of the termination
> hearing would have been more favorable to [the
> parents] had the juvenile court not [committed the

(continued...)

CONCLUSION

¶23　The Utah juvenile court properly exercised jurisdiction when it made the July 2009 custody determination. The family's subsequent relocation to Colorado did not divest the court of its exclusive, continuing jurisdiction over the July 2009 determination. Moreover, the court's January 2010 order closed the case only to the extent that it temporarily ended DCFS's involvement, but the court did not lose jurisdiction over the July 2009 determination and the July 2009 proceedings were not extinguished. Accordingly, the court's exercise of jurisdiction during the April 2010 proceedings and continuing on through its termination of Mother's and Father's parental rights was appropriate.

¶24　Additionally, the juvenile court did not err in denying the parents' motions for a new trial. The parents were not denied due process when the court rejected their request for a last minute continuance and conducted the trial in their absence.

¶25　Affirmed.

––––––––––

11. (...continued)
　　　due process violation].
*In re J.B.*, 2002 UT App 268, ¶ 9, 53 P.3d 968 (third alteration in original) (citations and internal quotation marks omitted). The extensive evidence against the parents and their prior history with DCFS strongly suggest that the result of the trial would have been no different had the parents attended the termination trial, and they have not demonstrated the likelihood of a more favorable outcome.