**2017 UT App 237**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.J.B.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

C.C.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20160954-CA
Filed December 29, 2017

Eighth District Juvenile Court, Duchesne Department
The Honorable Keith E. Eddington
No. 1100877

Herbert Wm. Gillespie, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

HARRIS, Judge:

¶1    C.C. (Mother) appeals the juvenile court's order terminating her parental rights to A.J.B. (Child), and asks us to consider two arguments. First, Mother argues that the juvenile court did not have jurisdiction to adjudicate the case, and asserts instead that the case should have proceeded in the Ute Tribal Juvenile Court (the tribal court). Second, Mother argues that, at a minimum, the juvenile court should have contacted the tribal court to discuss jurisdictional issues prior to commencing its

termination hearing.[1] Because we conclude that the juvenile court properly exercised its jurisdiction and did not abuse its discretion in declining to contact the tribal court, we affirm.

BACKGROUND

¶2     In June 2014, the State of Utah, Division of Child and Family Services (DCFS), filed a Verified Petition for Protective Services (the Petition), alleging that Mother had abused and neglected Child and seeking protective supervision of Child. In the Petition, DCFS alleged that Child resided in Duchesne County, Utah and that (prior to their respective incarcerations) both Mother and Child's father (Father) resided in Neola, Utah, a community in Duchesne County.[2] The Petition also stated that "neither parent is a member of a federally recognized Indian tribe," and that Child was therefore "not an 'Indian Child'" as defined by the Indian Child Welfare Act (ICWA). *See* 25 U.S.C. §§ 1901 to 1963 (2012).

¶3     The Petition further alleged that, in May 2014, Mother, Father, and Child had been living in Neola at Father's parents' residence when police responded to a "call for assistance" and found "drug paraphernalia, including drug pipes, old tin foil with drug residue, including white powder, [and] a prescription pill bottle [] containing whole pills and crushed up powder pills." The Petition sought, among other things, an order from the court determining that the court had "original exclusive jurisdiction of the child and subject matter of [the] petition pursuant to Utah Code § 78A-6-103."

---

1. Notably, Mother does not appeal the merits of the juvenile court's order terminating her parental rights.

2. Father relinquished his parental rights to Child, and his involvement in the case is not at issue in this appeal.

¶4 In her response to the Petition, Mother denied that she or Child resided in Neola, and asserted instead that she and Child resided with her parents in Roosevelt, Utah. She further asserted that she was at her parents' residence in Roosevelt when police found the drug paraphernalia at Father's parents' residence in Neola. Mother also generally denied the allegations of the Petition.

¶5 Early in the case, in June 2014, the parties agreed to mediate the dispute, an effort that was at least partially successful. After mediation, the parties were able to "agree[] on the facts" of the Petition, as amended, and agreed to "adjudicate" the Petition. Just a few days after the mediation was completed, DCFS filed an Amended Petition, and therein stated that the juvenile court had "original exclusive jurisdiction of the child" and that, at the time of the Petition, Child resided in Duchesne County. The Amended Petition also restated the allegations from the original Petition that "neither parent is a member of a federally recognized Indian tribe," and that Child was therefore "not an 'Indian Child'" as defined by ICWA. At a subsequent hearing, the juvenile court found that Mother requested that the facts recited in the Amended Petition "be deemed true" under rule 34(e) of the Utah Rules of Juvenile Procedure, which allows a respondent to admit or deny allegations of abuse and neglect at a pretrial hearing, and that Mother's request was voluntary.

¶6 On August 12, 2014, the court reduced the parties' agreement to a court order. Specifically, the court entered findings of fact and conclusions of law, finding that Child resided in Duchesne County and concluding that (1) although Mother is a member of the Timpanogos Tribe, that particular tribe is not a federally recognized tribe and therefore Child is "not an Indian Child" under ICWA, and that "the provisions of

ICWA do not apply in this case";[3] and (2) the court had jurisdiction. Mother did not take issue with these findings or conclusions. The court also ordered, pursuant to the mediated agreement of the parties, that Child reside with Mother's parents, who at the time apparently still resided in Roosevelt.

¶7      At some point in the latter part of 2014, Mother's parents moved to Whiterocks, Utah, a community that is inside the exterior boundaries of the Uintah and Ouray Reservation of the Ute Indian Tribe.[4] Over a year later, however, in March 2016, the court ruled that Mother's parents were in violation of prior court orders, and ordered a change of custody as a consequence. At that point, the juvenile court ordered that Father's parents would be given sole temporary custody of Child, and that they could relocate with Child to Oklahoma. After the juvenile court transferred custody of Child to Father's parents, DCFS moved to terminate Mother's parental rights to Child.

¶8      Shortly after the court placed Child with Father's parents, other parties appeared in the case. In May 2016, Child's maternal aunt and uncle (Aunt and Uncle), who are members of the Ute Indian Tribe, filed a Petition for Custody of Child with the tribal court. Aunt and Uncle also filed a Notice of Lack of Jurisdiction

---

3. ICWA applies only "where the court knows or has reason to know that an Indian child is involved." *See* 25 U.S.C. § 1912(a) (2012).

4. The record does not tell us exactly when Mother's parents moved to Whiterocks. However, at the outset of the case, Mother asserted that, prior to her May 2014 incarceration, she was residing with her parents in Roosevelt. She further asserted that Father lived with his parents in Neola. Thus, when DCFS filed the Petition, neither Mother's parents nor Father's parents lived in Whiterocks. The first time that Mother's parents' Whiterocks address appears in the record is in December 2014.

with the juvenile court, asserting that the juvenile court did not have jurisdiction to make custody orders with regard to Child, and seeking an order transferring the case to the tribal court. DCFS moved to strike Aunt and Uncle's filings with the juvenile court, a motion the juvenile court later granted.

¶9     On July 12, 2016, Ute Family Services (UFS) filed a motion in the juvenile court, asking it to transfer jurisdiction of the case to the tribal court because, according to UFS, Child "was removed from the . . . [Uintah and Ouray] reservation or its exterior boundaries." That same day, the tribal court purported to "accept jurisdiction" over Child. At a hearing the next day, the juvenile court struck UFS's motion to transfer, concluding that "this is not an ICWA case."

¶10    In September 2016, the juvenile court held a hearing on DCFS's motion to terminate Mother's parental rights. At the hearing, the court "identif[ied] for the record" that it had conferenced with the parties the day prior via telephone. Mother's counsel noted that, during the telephone conference, "the court overruled [Mother's] request . . . that the court postpone[] the trial to have a rule 100[5] type conference with" the tribal court judge to discuss which court—the juvenile court or the tribal court—would exercise jurisdiction over the case.

¶11    After the hearing, the juvenile court terminated Mother's parental rights, concluding, among other things, that "it is in the

_____

5. Rule 100 of the Utah Rules of Civil Procedure is titled "Coordination of Cases Pending in District Court and Juvenile Court." That rule, discussed more fully below, provides in part that a judge assigned to a child custody case "shall communicate and consult with any other judge . . . assigned to any other pending case involving the same issues and the same parties or their children." Utah R. Civ. P. 100(b).

child's best interests that [Mother's] parental rights [be] terminated as to [Child] so that [Child] may be adopted."

ISSUES AND STANDARDS OF REVIEW

¶12 On appeal, Mother first argues that the juvenile court's August 2014 order resulted in a "placement" of Child onto the Uintah and Ouray Reservation, and therefore the juvenile court's order "invoked the jurisdiction of the [Ute] tribe under its laws." Mother argues therefrom that the tribal court—and not the juvenile court—should have been the court to exercise jurisdiction over Child.[6] We review jurisdictional issues for correctness. *Nevares v. Adoptive Couple*, 2016 UT 39, ¶ 10, 384 P.3d 213 (noting that whether a district court has subject matter jurisdiction is a question of law reviewed for correctness).

¶13 Second, Mother argues that the juvenile court should have contacted the tribal court "to discuss the tribe's assertion of jurisdiction" in compliance with rule 100 of the Utah Rules of Civil Procedure. We review a court's interpretation of a rule of

---

6. As we described above, Mother did not ever raise any specific objection to the juvenile court's exercise of jurisdiction in this case. Two other parties (Aunt/Uncle and UFS) did raise such objections, but those parties did not ask to intervene in the juvenile court proceedings and are not parties to this appeal. Despite some concerns with whether Mother properly preserved a jurisdictional objection in the juvenile court, we proceed to consider the merits of Mother's argument here, chiefly because neither DCFS nor the Guardian ad Litem made any argument in their briefs that Mother had not properly preserved the issue. *See JP Morgan Chase Bank, NA v. Wright*, 2015 UT App 301, ¶ 8 n.6, 365 P.3d 708 (proceeding to the merits of an argument, despite harboring some concerns about preservation, "because [appellee] has not challenged the argument as unpreserved").

civil procedure for correctness. *Bennett v. Bigelow*, 2016 UT 54, ¶ 17, 387 P.3d 1016. And because we conclude that the juvenile court's decision not to contact the tribal court is governed by Utah's version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which states that "[a] court of this state *may* communicate with a court in another state," *see* Utah Code Ann. § 78B-13-110(1) (LexisNexis 2012) (emphasis added), we review the juvenile court's ultimate decision not to contact the tribal court for abuse of discretion, *see Zaragoza v. State*, 2017 UT App 215, ¶¶ 17–19 (observing that the legislature's use of the word "may" means that "a district court enjoys wide latitude" in making a decision authorized by statute, and that such decisions are reviewed for abuse of discretion).

ANALYSIS

I

¶14　The jurisdictional question in this case is answered by the UCCJEA. *See* Utah Code Ann. §§ 78B-13-101 to -318 (LexisNexis 2012). That statute was created and enacted to facilitate cases where courts in multiple jurisdictions could potentially exercise simultaneous and concurrent jurisdiction over child custody cases. *See Nevares*, 2016 UT 39, ¶ 11 (stating that "[t]he model act exists to avoid jurisdictional competition and conflict with courts of other States in matters of child custody" (citation and internal quotation marks omitted)).[7]

---

7. The Ute Indian Tribe has apparently not adopted any version of the UCCJEA. Nevertheless, the UCCJEA applies here, and provides the framework that the Utah Legislature has instructed Utah courts to use in inter-jurisdictional custody situations. *Cf.* Utah Code Ann. § 78B-13-104(2) (LexisNexis 2012) (stating that "[a] court of this state shall treat a tribe as a state" for purposes

(continued…)

¶15　Under the UCCJEA, a Utah court has jurisdiction to make an initial custody determination[8] only if any one of several different jurisdictional prerequisites are met. Applicable here, a Utah court has jurisdiction if Utah is "the home state of the child on the date of the commencement of the proceeding." Utah Code Ann. § 78B-13-201(1)(a). The UCCJEA defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 78B-13-102(7). Here, the Petition, which DCFS filed in June 2014, alleged that Child lived in Duchesne County, Utah and that Child was born in 2012. Although the Petition did not specifically allege that Child had lived in Duchesne County for six consecutive months prior to the filing of the Petition, the Petition did not allege that Child had ever lived in any other state, country, or Indian reservation. The reasonable inference to be drawn from the Petition is that Child had lived in Duchesne County, and not on any Indian reservation, from the time he was born in 2012 all the way through June 2014. Mother does not argue otherwise, and she even concedes on appeal that "the juvenile court may have had jurisdiction at the commencement of the case." Therefore, we are

---

(…continued)

of the UCCJEA); *id.* § 78B-13-105(1) (stating that "[a] court of this state shall treat a foreign country as a state" for purposes of the UCCJEA). The UCCJEA contains no provision instructing courts not to apply its principles in the event that the other state (or tribe or country) has not adopted a similar statute.

8. An "initial determination" is defined in the UCCJEA as "the first child custody determination concerning a particular child." *See* Utah Code Ann. § 78B-13-102(8). And a "child custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or parent-time with respect to a child." *Id.* § 78B-13-102(3).

satisfied that Utah was Child's home state at the commencement of the proceedings, and the juvenile court therefore had jurisdiction under section 201 of the UCCJEA to make an initial custody determination regarding Child.

¶16 "Once a state makes an initial child custody determination, that state obtains exclusive, continuing jurisdiction, which exists until that state relinquishes or is divested of its exclusive jurisdiction in accordance with the UCCJEA or a similar act." *Nevares*, 2016 UT 39, ¶ 12, (citing Utah Code section 78B-13-202); *see also* Utah Code Ann. § 78B-13-207(1) (providing that a Utah court can decline to exercise its jurisdiction if that court determines that it is an inconvenient forum and that another court is a more appropriate forum); *In re Z.Z.*, 2013 UT App 215, ¶ 11, 310 P.3d 772 (stating that, once a court makes an initial custody determination, it has "exclusive, continuing jurisdiction over the custody determination it made"). The juvenile court did not ever relinquish its jurisdiction over the case, whether pursuant to section 207 of the UCCJEA or any other statute.

¶17 Mother argues, however, that the fact that Child ended up living in Whiterocks—a community within the exterior boundaries of the Uintah and Ouray Reservation—changed everything, and effectively divested the juvenile court of jurisdiction over Child and vested jurisdiction in the tribal court. We disagree with this contention for three reasons.

¶18 First, as discussed above, Utah was Child's home state when the juvenile court made its initial custody determination, and the juvenile court did not relinquish its jurisdiction. Once the juvenile court made its initial custody determination, it retained exclusive and continuing jurisdiction until either (a) it determined that Child no longer had "a significant connection" with Utah and that "substantial evidence is no longer available in [Utah] concerning" Child; or (b) the juvenile court or "a court

of another state" determined that "neither the child, nor a parent, nor any person acting as a parent presently resides" in Utah. *See* Utah Code Ann. § 78B-13-202(1)(a)–(b). The juvenile court did not make either of those determinations; indeed, it did not even undertake an inconvenient forum analysis under section 207. See *Id.* § 78B-13-207(1). Moreover, there is no indication in the record that any "court of another state," including the tribal court, ever made a specific determination that Child and both of his parents had moved outside of Utah. Thus, because neither of the necessary conditions for loss of jurisdiction occurred, the juvenile court maintained jurisdiction over Child throughout the proceedings.

¶19 Second, although the exact timing is not completely clear, the record establishes that Mother's parents moved to Whiterocks *after* DCFS filed the Petition. This move did not divest the juvenile court of its exclusive and continuing jurisdiction. *See Z.Z.*, 2013 UT App 215, ¶ 16 (observing that parties cannot divest the juvenile court of its exclusive, continuing jurisdiction by relocating during the pendency of a custody proceeding).

¶20 Finally, although we acknowledge that tribal law issues have not been exhaustively briefed in this case, we have not yet seen any cogent argument, under any of the tribal laws that have been cited to us, in favor of tribal court jurisdiction. As far as we have been told, under tribal law the tribal court has jurisdiction only "over any Indian or Member child . . . and over all persons having the care, custody or control of such children." *See* Law and Order Code of the Ute Indian Tribe of the Uintah and Ouray Reservation Utah § 4-3-1 (2013). As noted, all parties are in agreement in this case that Child is not a member of the Ute Indian Tribe, and is not an "Indian Child" under ICWA. Therefore, at least based on what has been cited to us, it does not

appear that tribal law gives the tribal court jurisdiction over Child.[9]

¶21    Accordingly, we conclude that the juvenile court had jurisdiction at the outset of the case to make an initial custody determination with regard to Child, and that the juvenile court never lost that jurisdiction at any point during these proceedings. The juvenile court's determination that it had jurisdiction was therefore correct.

II

¶22    Second, Mother argues that the juvenile court erred by declining her invitation to communicate with the tribal court regarding the jurisdictional issues presented here. To support her argument, Mother relies nearly entirely upon her citation to rule 100 of the Utah Rules of Civil Procedure.

¶23    On its face, however, rule 100 does not apply. That rule is titled, "Coordination of Cases Pending in District Court and Juvenile Court," and we infer from its title as well as from various portions of its text that the rule was intended to apply only to situations in which multiple cases are simultaneously pending in *Utah* state courts (whether district or juvenile). In addition to the rather clear titular language, the rule also contains provisions discussing whether to "consolidate cases

---

9. Moreover, even if the tribal court *did* have jurisdiction over Child, that jurisdiction would apparently be concurrent with the juvenile court, rather than exclusive. *See* Law and Order Code of the Ute Indian Tribe of the Uintah and Ouray Reservation Utah § 1-2-6 (2013) (stating that "[t]he jurisdiction invoked by this Code over any person, cause of action, or subject shall be concurrent with any valid jurisdiction over the same of the courts of the United States, any state, or any political subdivision thereof").

within a county" or to "transfer a case to the court of another county," provisions that make no sense in an interstate context. *See* Utah R. Civ. P. 100(d)(1)–(2). Furthermore, the rule contains references to Utah Code of Judicial Administration 3-108, *see id.* R. 100(e), a rule discussing the manner in which Utah senior or active judges may preside over cases outside their usual jurisdictional ambit, and contains references to domestic relations "commissioners," who are Utah quasi-judicial officers that preside over domestic relations cases in certain Utah judicial districts, *see id.* R 100(b); *see also* Utah R. Jud. Admin. 3-201. In our view, rule 100 does not apply in the interstate context.

¶24    Communication between judicial officers in the interstate context is instead covered by the UCCJEA, which specifically provides that "[a] court of this state *may* communicate with a court in another state concerning a proceeding" that invokes the UCCJEA. *See* Utah Code Ann. § 78B-13-110(1) (emphasis added). As noted, the statute directs Utah courts to treat Indian tribes as "states" under the UCCJEA. *Id.* § 78B-13-104 (stating that a "court of this state shall treat a tribe as a state" for purposes of UCCJEA jurisdictional analysis). Thus, when an interstate jurisdictional issue arises under the UCCJEA, a Utah court *may* contact the court in the other state/tribe to discuss the jurisdictional quandary.

¶25    We note that the UCCJEA uses the permissive term "may," rather than a mandatory term such as "must" or "shall," in describing a Utah court's responsibility to communicate with a court of another state or tribe. The use of the term "may" means that a court is certainly authorized to communicate with a court of another state, but absent unusual circumstances is not necessarily required to do so. *See* Utah Code Ann. § 68-3-12(1)(g) (LexisNexis 2016) (indicating that "'may' means that an action is authorized or permissive"); s*ee also Card v. Card*, 2016 UT App 233, ¶ 3, 391 P.3d 264 (per curiam) (stating that "a statute's use of the word 'may' indicates a court's discretionary power" (citation

and additional internal quotation marks omitted)); *State v. Draper-Roberts*, 2016 UT App 151, ¶ 14 & n.5, 378 P.3d 1261 (stating that "[a]ccording to its ordinary construction the word 'may' means permissive," and indicates that something is "optional" and "not required" (citations and internal quotation marks omitted)).

¶26 When a statute indicates that a court "may" take a certain action, we review the court's decisions for abuse of discretion. *See Mota v. Mota*, 2016 UT App 201, ¶ 6, 382 P.3d 1080 (stating that "a statute's use of the word 'may' indicates a court's discretionary power, the exercise of which we review for an abuse of discretion"). Our supreme court has instructed that a district court abuses its discretion "only if its decision was beyond the limits of reasonability," an event that occurs when the district court has taken actions that are "inherently unfair" or that "no reasonable person would take." *Ross v. State*, 2012 UT 93, ¶ 57, 293 P.3d 345 (brackets, citation, and internal quotation marks omitted).

¶27 Here, the juvenile court's decision to decline to contact the tribal court was not an abuse of discretion. As discussed, Mother stipulated to the juvenile court's jurisdiction, and the juvenile court never concluded that it did not have jurisdiction or that a more convenient forum existed; Mother's parents' relocation to Whiterocks did not divest the court of its exclusive, continuing jurisdiction; and no party gave the juvenile court any credible reason to believe that, even under tribal law, jurisdiction over this case should rest with the tribal court. Given these facts, we cannot conclude that the juvenile court abused its discretion when it elected not to contact the tribal court.[10]

---

10. As noted, the applicable statutory provision does not *require* a Utah court to communicate with a court of another state or tribe in the UCCJEA context. Despite the lack of compulsion, we note

(continued…)

CONCLUSION

¶28    The juvenile court had jurisdiction over this case from the outset, and properly exercised its exclusive and continuing jurisdiction to make a child custody determination. Although it may have been advisable for the juvenile court to communicate with the tribal court in this case, we cannot conclude that the juvenile court abused its discretion in declining to do so. Accordingly, we affirm.

---

(…continued)
that in cases like this one—where the sister court in question is the court of a sovereign Indian tribe housed in relatively close proximity—principles of comity, respect, and good community relations counsel strongly in favor of making a communication.